UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| SYLVESTER BUTLER, KELVIN FRAZIER, CURT MASSIE, JEREMIAH THOMAS, EUGENE ULRATH, REGINALD WILLIAMS,<br><br>    Plaintiffs,<br>v.<br><br>JAMES V. CROSBY, JR., BRADLEY CARTER, GEORGE SAPP, STEPHEN SIRMONES, JOE LAZENBY JR., ALLEN CLARK, MARK REDD, KEITH MUSSELMAN, TONY ANDERSON, JAMES WILSON, WILLIAM MUSE, COLIN HALLE, STEVEN TRICOCCI, TIM CHASTAIN, RODNEY BARNETT, RONNIE BARTON, KENNETH LAMPP, WENDELL WHITEHURST, STACEY GREEN, DAVID REYNOLDS, JOHN RIGGS, GLYNN REEDER, JOHN RIZER, OSCAR SHIPLEY, DEAN ELLIS, JEFFREY LINDSEY, BILLY JARVIS, each in his individual capacity,<br><br>    Defendants. | Civil Action No. 3:04-CV-917-J-32mmH |

## INITIAL COMPLAINT AND JURY DEMAND

Plaintiffs, Sylvester Butler, Kelvin Frazier, Curt Massie, Jeremiah Thomas, Reginald Williams and Eugene Ulrath, sue Defendants James V. Crosby, Jr., Bradley Carter, George Sapp, Stephen Sirmones, Joe Lazenby Jr., Allen Clark, Mark Redd, Keith Musselman, Tony Anderson, James Wilson, William Muse, Colin Halle, Steven Tricocci, Tim Chastain, Rodney Barnett, Ronnie Barton, Kenneth Lampp, Wendel Whitehurst, Stacey Green, David Reynolds,

John Riggs, Glynn Reeder, John Rizer, Oscar Shipley, Dean Ellis, Jeffrey Lindsey, and Billy Jarvis, and allege:

### Preliminary Statement

1. This is a civil rights action brought by six inmates at Florida State Prison, pursuant to 42 U.S.C. § 1983, seeking compensatory and punitive damages and alleging that Defendants have engaged in a pattern and practice of excessive and unauthorized use of chemical agents against Plaintiffs and other Florida State Prison inmates in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Defendants include Florida State Prison correctional officers who have used chemical agents against the Plaintiffs maliciously and sadistically for the very purpose of causing harm and not in a good faith effort to maintain or restore order. Defendants also include supervisors at Florida State Prison who have participated, facilitated, encouraged, or acquiesced in the correctional officers' abuse of the Plaintiffs with chemical agents.

### Jurisdiction

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 in that this is a civil action arising under the Constitution of the United States.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under color of state law, of rights secured to the Plaintiffs by the Eighth and Fourteenth Amendments to the Constitution of the United States.

4. The Plaintiffs' claims for relief are predicated upon 42 U.S.C. § 1983, which

authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to the Plaintiffs by the Constitution and laws of the United States.

5. The Plaintiffs' claims for attorneys' fees and costs is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

6. All Plaintiffs have fully exhausted their administrative remedies.

## Venue

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because at least one of the Defendants resides in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

## Parties

8. Plaintiff, Sylvester Butler, is a prisoner currently incarcerated at Santa Rosa Correctional Institution in Santa Rosa County, Florida. When the events giving rise to his claim occurred, he was incarcerated at Florida State Prison, located in Bradford County, Florida.

9. Plaintiff, Kelvin Frazier, is a prisoner currently incarcerated at Charlotte Correctional Institution in Charlotte County, Florida. When the events giving rise to his claim occurred, he was incarcerated at Florida State Prison, located in Bradford County, Florida.

10. Plaintiff, Curt Massie, is a prisoner currently incarcerated at Desoto Correctional Institution Annex in Desoto County, Florida. When the events giving rise to this his claim occurred, he was incarcerated at Florida State Prison, located in Bradford County,

3

Florida.

11. Plaintiff, Jeremiah Thomas, is a prisoner currently incarcerated at Union Correctional Institution, located in Union County, Florida. When the events giving rise to his claim occurred, he was incarcerated at Florida State Prison, located in Bradford County, Florida.

12. Plaintiff, Eugene Ulrath, is a prisoner currently incarcerated at Union Correctional Institution in Union County, Florida. When the events giving rise to his claim occurred, he was incarcerated at Florida State Prison in Bradford County, Florida.

13. Plaintiff, Reginald Williams, is a prisoner currently incarcerated at Union Correctional Institution in Union County, Florida. When the events giving rise to his claim occurred, he was incarcerated at Florida State Prison in Bradford County, Florida.

14. Defendant, James V. Crosby, Jr. was the Warden of Florida State Prison from February 1998 to July 18, 2001. Defendant Crosby is currently employed as the Secretary of the Florida Department of Corrections. He is sued in his individual capacity.

15. Defendant, Bradley Carter, was the Warden of Florida State Prison from July 18, 2001 to October 1, 2002. He is sued in his individual capacity.

16. Defendant, George Sapp, was an Assistant Warden employed at Florida State Prison from August 2, 1999 to November 1, 2000. He is sued in his individual capacity.

17. Defendant, Stephen Sirmones, was an Assistant Warden employed at Florida State Prison from June 30, 2000 to November 7, 2002. He is sued in his individual capacity.

18. Defendant, Joe Lazenby Jr., was an Assistant Warden employed at Florida

4

State Prison from September 7, 2001 to January 30, 2003. He is sued in his individual capacity.

19. Defendant, Allen Clark, was a Correctional Officer Major and/or Colonel employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

20. Defendant Mark Redd, was a Correctional Officer Colonel employed at Florida State Prison from September 18, 1998 to June 28, 2001. He is sued in his individual capacity.

21. Defendant, Keith Musselman, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

22. Defendant, Tony Anderson, was a Correctional Officer Lieutenant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

23. Defendant, James Wilson, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

24. Defendant, William Muse, was a Correctional Officer Captain employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

25. Defendant, Colin Halle, was a Correctional Officer Lieutenant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

26. Defendant, Steven Tricocci, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

27. Defendant, Tim Chastain, was a Correctional Officer Captain employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

28. Defendant, Rodney Barnett, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

29. Defendant, Ronnie Barton, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

30. Defendant, Kenneth Lampp, was a Correctional Officer Captain employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

31. Defendant, Wendel Whitehurst, was a Correctional Officer Duty Warden and Assistant Warden employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

32. Defendant, Stacey Green, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

33. Defendant, David Reynolds, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

34. Defendant, John Riggs, was a Correctional Officer Captain employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

35. Defendant, Glynn Reeder, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

36. Defendant, John Rizer, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

37. Defendant, Oscar Shipley, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

38.     Defendant, Dean Ellis, was a Correctional Officer Captain employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

39.     Defendant, Billy Jarvis, was a Major and/or Duty Warden employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

40.     Defendant, Jeffrey Lindsey, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

41.     At all times relevant to the events described herein, the Defendants were acting under color of state law.

### Factual Allegations

42.     Employees of Florida State Prison are authorized to use a variety of types of force where the circumstances warrant, including hands-on physical force, chemical agents, electronic immobilization devices, batons, and specialty munitions, as described in Rule 33-602.210, Florida Administrative Code, promulgated by the Florida Department of Corrections.

43.     Rule 33-602.210(14), F.A.C., provides that three types of chemical agents may be used against prisoners: 1. Oleoresin Capsicum (pepper spray), 2. Orthochlorbenzal Malononitrile or Orthochlorobenzylidene Malononitrile (CS tear gas), and 3. Cloroacetophene (CN tear gas).

44.     As described in Rule 33-602.210(14), F.A.C., each of these chemical agents causes, and is intended to cause, intense physical pain when applied to human beings. The physical effects described by the Rule are as follows: (a) OC pepper spray "causes tearing and

7

involuntary closing of the eyes, nasal discharge, sneezing, disorientation, and the sensation of respiratory distress;" (b) CS tear gas "causes eyes to burn and tear, nasal discharge, and skin and upper respiratory irritation;" and (c) CN tear gas "causes tearing of the eyes, nasal discharge, and skin and upper respiratory irritation."

45. When an inmate is exposed to chemical agents, DOC rule 33-602.210 (14) and accepted correctional practice requires that the inmate be given a shower after the use of force.

46. Each Plaintiff was housed in Close Management at the Florida State Prison each time that he was abused with chemical agents. They were each in single confinement cells that had solid doors and limited ventilation.

47. Chemical agents, including OC pepper spray, CS tear gas, and CN tear gas, became the primary method of force used against prisoners during Defendant Crosby's tenure as Warden of Florida State Prison and continued to increase under his successor, Defendant Carter.

48. At Florida State Prison, chemical agents were used 238 times in 2000, 385 times in 2001, and 447 times in 2002. This represents an 87% increase in the use of chemical agents over this period of time.

49. As Defendants escalated the use of chemical agents, prisoners increasingly complained that correctional officers were using chemical agents as a means of retaliating against them for lawful activities, such as seeking assistance, asking that staff follow the established rules, filing grievances, or otherwise complaining about their conditions of

8

incarceration.

50. Florida State Prison inmates filed countless grievances alleging that correctional officers were using chemical agents on them without justification and in grossly excessive quantities.

51. Defendants Crosby, Carter, Sapp, Sirmones, and Lazenby reviewed numerous inmate grievances alleging abuse with chemical agents and had the responsibility to respond appropriately. They consistently failed to follow up on grievances alleging abuse with chemical agents, and failed to take action even when Department of Corrections Inspector General's Office, charged with investigating claims of abuse throughout the Florida prison system, determined that a complaint should be resolved at the institutional level.

52. Defendants Crosby, Carter, Sapp, Sirmones, and Lazenby reviewed the use of force reports submitted by the correctional officers who used chemical agents against inmates. They were responsible for making a recommendation as to whether the use of force should be approved or disapproved.

53. On information and belief, Defendants Crosby, Carter, Sapp, Sirmones and Lazenby never once recommended that the use of chemical agents be disapproved.

54. On information and belief, Defendants Crosby, Carter, Sapp, Sirmones and Lazenby never requested a special investigation into the emerging pattern of increased use of chemical agents and the corresponding claims that these weapons were being used to abuse and injure Florida State Prison inmates, including Plaintiffs'.

55. On information and belief, Defendants Crosby, Carter, Sapp, Sirmones and

Lazenby never made an effort to identify officers who were using chemical agents as a matter of routine or inquire about why there was such a dramatic rise in the use of these weapons.

56. Defendants Crosby and Carter promoted officers who were using chemical agents with increasing frequency, even though there were rising numbers of complaints of abuse against those same officers.

57. Defendants Crosby and Carter failed to train, supervise and discipline correctional officers to prevent the excessive and unjustified use of chemical agents against Florida State Prison inmates, including Plaintiffs.

58. Defendants Crosby and Carter failed to require videotaping of the use of chemical agents, although video cameras were available at the prison and every other type of force was required to be videotaped for review.

59. Defendants Crosby and Carter's policy of not videotaping the use of chemical agents was intended to avoid creating a record that would allow meaningful review of the use of chemical agents.

60. Defendants Redd, Clark and Jarvis held the most senior security staff positions at Florida State Prison and were responsible for direct supervision of the correctional officers who were using chemical agents.

61. Defendants Redd, Clark, and Jarvis actively encouraged the security staff to use chemical agents to humiliate and abuse prisoners and frequently authorized the use of chemical agents with full knowledge that the force was being used solely to inflict pain, including against Plaintiffs.

10

62. Defendants Crosby, Carter, Sapp, Sirmones, Lazenby, Redd, Clark and Jarvis routinely authorized the use of chemical agents, including against Plaintiffs, without taking steps to ensure that the use of force was consistent with constitutional standards and Rule 33-602.210, F.A.C.

63. Defendants Crosby, Carter, Sapp, Sirmones, Lazenby, Redd, Clark and Jarvis actively implemented an unwritten policy that correctional officers were to use chemical agents to inflict corporal punishment on Florida State Prison inmates as a method of injuring and humiliating them.

64. In August 2000, a group of Florida State Prison inmates went on a hunger strike to protest the increasingly brutal use of chemical agents against them. They requested a meeting with Defendant Crosby to discuss their demand that he take action to stop the completely unjustified use of chemical agents against them.

65. Defendant Crosby refused to meet with the prisoners who were seeking relief from the officers who were using chemical agents against them for improper reasons and in response to past conduct.

66. As a result of the pattern and practice of using chemical agents to inflict pain, encouraged and facilitated by Defendants Crosby, Carter, Sapp, Sirmones, Lazenby, Redd, Clark, and Jarvis, the Plaintiffs suffered severe injuries to their skin, eyes, lungs, or mental health.

### Sylvester Butler

67. Plaintiff Butler is a prisoner in the custody of the Florida Department of

11

Corrections. At all times material to the Complaint he was incarcerated at Florida State Prison

68. Plaintiff Butler has a history of psychiatric problems and is borderline developmentally disabled.

69. On October 3, 2000, while at Florida State Prison, Plaintiff Butler sought medical attention by declaring a medical emergency to security staff.

70. In response, Defendants Chastain and Reeder turned off the exhaust fans, approached his cell, unlocked the food flap and Defendant Reeder began spraying chemical agents into the cell. The can used was approximately the size of a fire extinguisher, with a long hose and nozzle that was inserted into the cell.

71. Despite Plaintiff Butler's compliance with all orders, Defendants returned twice during the next hour and sprayed tear gas into his cell. No warnings were given before chemical agents were used.

72. Defendants did not take Plaintiff Butler to the shower so he could rinse off the chemicals.

73. Defendant Clark authorized this use of force against Plaintiff Butler with full knowledge that it was being used solely as a means of torture and intimidation.

74. Defendant Reeder wrote a pretextual and false Use of Force report alleging that force was used because Plaintiff Butler was "beating on his cell door and was refusing all verbal orders from me to cease his disorderly conduct or chemical agents would be administered." He also stated that he used only three 1-second bursts of pepper spray and of

12

tear gas.

75. Defendant Reeder fabricated this Use of Force Report with the intention of covering up his unjustified and excessive use of chemical agents on Plaintiff Butler.

76. In a further attempt to conceal his improper use of force, Defendant Reeder wrote Plaintiff Butler a disciplinary report for disorderly conduct.

77. Defendants Reeder, Chastain and Clark were aware that the use of force on Plaintiff Butler was not necessary to maintain or restore order because he was locked in his cell and only asking for medical attention.

78. Plaintiff Butler developed large, water filled blisters on his hip. The blisters eventually broke and Plaintiff Butler's skin peeled off, leaving his entire hip with a raw, seeping wound.

79. Plaintiff Butler has exhausted all available administrative remedies regarding the use of chemical agents against him on October 3, 2000.

### Kelvin Frazier

80. Plaintiff Kelvin Frazier is a prisoner in the custody of the Florida Department of Corrections. At all times material to the Complaint he was incarcerated at Florida State Prison.

81. Plaintiff Frazier has asthma, a condition that causes inflammation of the lungs and reduced breathing capacity.

82. On January 4, 2001, Defendants Reynolds and Riggs sprayed Plaintiff Frazier in response to his request to speak to Defendant Riggs, a Captain.

13

83. When Defendant Riggs arrived at Plaintiff Frazier's cell, instead of speaking with Plaintiff Frazier he directed Defendant Reynolds to spray pepper spray into the cell using a canister approximately the size of a fire extinguisher. No orders or warnings were issued to Plaintiff Frazier. Defendants Riggs and Reynolds continued to spray pepper spray and tear gas into Plaintiff Frazier's over the course of the next half hour.

84. The quantity of chemical agents used by Defendants was so great that Plaintiff Frazier was soaking wet, as were the walls, floor, and his personal property.

85. After exposure to chemical agents, Plaintiff Frazier had an asthma attack leaving him in respiratory distress. Blisters later formed on Plaintiff Frazier's neck and his skin started to peel off. Plaintiff Frazier had second-degree chemical burns on his neck and around his left ear.

86. In order to cover up the unjustified use of force, Defendant Reynolds wrote a Use of Force Report that stated Plaintiff Frazier was "being loud and disruptive by yelling and kicking on his cell door" and that "he was ordered numerous times to cease his disruptive conduct, but to no avail." He also stated that he used only three 1-second bursts of both pepper spray and tear gas.

87. The Use of Force Report written by Defendant Reynolds is false.

88. Plaintiff Frazier's disciplinary report for disorderly conduct, written to further conceal the Defendants' unjustified use of force, was overturned on appeal.

89. On January 11, 2001, Defendants Reeder and Lampp sprayed Plaintiff Frazier with chemical agents in retaliation for the grievances he filed about the previous week's use of

force. Plaintiff Frazier received no warnings from Defendants before they sprayed chemical agents into his cell.

90. The chemical agents aggravated the burns on Plaintiff Frazier's neck and also burned his forearms.

91. Defendants Reeder and Lampp were aware that the use of force on Plaintiff Frazier was not necessary to maintain or restore order because Plaintiff Frazier was quiet and locked in his cell.

92. Defendant Reeder wrote a Use of Force Report stating that he "observed Inmate Frazier beating on his cell door, and [sic] was refusing all verbal orders from me to cease his disorderly conduct or chemical agents would be administered." He also stated that he sprayed only three 1-second bursts of pepper spray.

93. This was a false report written to cover up the unjustified and excessive use of force against Plaintiff Frazier.

94. Plaintiff Frazier received a disciplinary report for disorderly conduct but it was overturned on appeal.

95. Plaintiff Frazier has exhausted all available administrative remedies regarding the matters described herein. He filed grievances about both incidents all the way to the Secretary's office, explaining that in each case the use of chemical agents was unjustified. He received the same responses back on both sets of grievances, each stating that his request for action was denied because the Office of the Inspector General was conducting a review. Plaintiff Frazier was never notified about the outcome of the Inspector General's

15

investigations.

### Curt Massie

96.     Plaintiff Curt Massie is a prisoner in the custody of the Florida Department of Corrections. At all times material to the Complaint he was housed at Florida State Prison.

97.     Plaintiff Massie is a 41-year-old man diagnosed with Obsessive Compulsive Disorder and Delusional Disorder. At all times material to the Complaint he was taking psychotropic medication to treat his mental illness.

98.     On October 8, 2000, Defendants Green and Halle used chemical agents on Plaintiff Massie to punish him for making a funny face behind a nurse's back.

99.     Defendants Green and Halle failed to issue any warnings or orders to Plaintiff Massie before emptying cans of pepper spray and CS tear gas into his locked cell.

100.    To justify the use of chemical agents, Defendant Green wrote a Use of Force Report stating that force was used because Plaintiff Massie had cursed at staff, screamed threats, and refused several orders to stop. He also stated that he used only three 1-second bursts of both pepper spray and tear gas.

101.    The Use of Force Report written by Defendant Green falsely states the reasons for the use of force and the amount of chemical agents used on Plaintiff Massie.

102.    Defendant Clark authorized this use of force with full knowledge that it was unjustified.

103.    When Plaintiff Massie was taken to the shower, Defendant Green turned the hot water on to intensify the pain Plaintiff Massie was experiencing from the chemical agents.

104. Defendants failed to give Plaintiff Massie clean sheets for several hours and he was never issued a clean blanket.

105. Plaintiff Massie suffered second-degree chemical burns that caused large fluid-filled blisters and inflamed skin on his left arm, left leg, back and hip. The blisters on Plaintiff Massie's skin later burst, leaving raw exposed skin.

106. Plaintiff Massie still experiences pain and burning when his skin is exposed to direct sunlight.

107. Despite Plaintiff Massie's extreme reaction to chemical agents, Defendants Clark, Green, and Halle again authorized and used these weapons on him on September 23, 2001.

108. In order to avoid creating a record that would allow meaningful review of the use of chemical agents against Plaintiff Massie, Defendants Clark, Green, and Halle failed to videotape either of the incidents when chemical agents were used against him, even though these were not spontaneous uses of force and there was ample time to obtain a video camera.

109. Plaintiff Massie has exhausted all available administrative remedies regarding the matters described herein. In his grievance appeal to the DOC Central Office he explained that Defendant Green used force against him vindictively and excessively. The response from Central Office states that the DOC Inspector General's office was reviewing the subject of his grievance and that his request for action was denied.

110. After an investigation, the DOC Inspector General's office approved this use of force on March 27, 2001, despite the inspectors' knowledge that the use of force against

17

Plaintiff Massie was in response to past behavior and not in response to ongoing disorderly conduct.

### Jeremiah Thomas

111. Plaintiff Jeremiah Thomas is a prisoner in the custody of the Florida Department of Corrections. At all times material to the Complaint he was housed at Florida State Prison.

112. Plaintiff Thomas is a 31-year-old man with an extensive history of psychiatric problems. He suffers from Schizoaffective Disorder, which causes him to experience auditory hallucinations and bouts of mania during which he does not sleep for days and makes rhythmic noises by talking to himself or banging on his cell walls and door. Since his incarceration in 1991, he has been civilly committed to the Correctional Mental Health Institution several times, frequently admitted for in-patient mental health treatment, and is currently housed in the in-patient Transitional Care Unit at Union Correctional Institution.

113. Plaintiff Thomas has been diagnosed with asthma, a medical condition that causes inflammation of the lungs and reduced breathing capacity.

114. On September 20, 2000, at approximately 11:20 a.m., Mr. Thomas cut and mutilated his forearm. He was seen by mental health staff and he asked for help.

115. On September 20, 2000, at approximately 3:00 p.m., mental health staff counseled Mr. Thomas regarding his refusal to take his psychotropic medication the previous evening.

116. On September 20, 2000, Defendant Musselman sprayed a large quantity of

pepper spray into Plaintiff Thomas's cell without first issuing any orders or warnings. This force was used at the direction of Defendant Anderson and with the authorization of Defendant Clark.

117.   In order to cover up the excessive quantity of chemical agents he used, Defendant Musselman wrote a report stating that he used only three 1-second bursts of chemical spray. This statement is false.

118.   The next day, September 21, 2000, Mr. Thomas was in his cell when Defendant Wilson sprayed a large amount of pepper spray into Plaintiff Thomas' cell without warning. This was at the direction of Defendant Muse and with the authorization of Defendant Clark.

119.   In his Use of Force report Defendant Wilson falsely stated that he used only three 1-second bursts of spray. This is a false statement designed to cover up the grossly excessive quantities of chemical agents used.

120.   Two days later, September 23, 2000, Plaintiff Thomas was in his cell when Defendant Wilson failed to issue any warnings or orders to Plaintiff Thomas before spraying him with both pepper spray and tear gas. This force was used at the direction of Defendant Halle and with the authorization of Defendant Clark.

121.   Again, Defendant Wilson wrote a false Use of Force Report stating that he had used only three 1-second bursts of both pepper spray and CN tear gas to cover up the fact that he used great quantities of chemical agents that soaked Plaintiff Thomas's entire body.

122.   The next day, on September 24, 2000, Defendant Tricocci sprayed Plaintiff

19

Thomas with chemical agents without first issuing any orders or warnings. This force was used at the direction of Defendant Chastain and with the authorization of Defendant Clark. This was the fourth time in five days that Defendant Clark authorized the use of force against Plaintiff Thomas.

123. In his Use of Force Report, Defendant Tricocci falsely stated that he used only three 1-second bursts of spray on Plaintiff Thomas.

124. During this time Plaintiff Thomas was experiencing an acute psychiatric breakdown and was in need of mental health care. During the post-use of force exam conducted by a nurse at approximately 3:00 p.m., Mr. Thomas exhibited disturbing signs of psychosis. The nurse noted that Mr. Thomas told her that he played professional football with the Dolphins in Philadelphia. She also noted that Mr. Thomas smelled like urine.

125. Plaintiff Thomas was severely burned by the excessive amount of chemical agents used on September 20, 21, 23 and 24, 2000. He had painful blisters and open wounds on his ear and neck, abdomen, left arm, upper back and lower right leg.

126. In addition to the intense burning sensation and second-degree burns, each time they sprayed Mr. Thomas he could barely breathe and was left taking little gasps of air for days afterward. He felt like he was going to die and he frequently wept from the pain.

127. On September 25, 2000, Defendant Sapp, at that time the Assistant Warden at FSP, reviewed and approved the uses of force on Plaintiff Thomas from September 20, 21, 23 and 24, 2000. After reviewing these reports, he was aware that Plaintiff Thomas was having symptoms of psychosis and mania and that he had blisters and burns all over his body.