UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JEREMIAH THOMAS, EUGENE
ULRATH, SYLVESTER BUTLER, CURT
MASSIE, KELVIN FRAZIER,
REGINALD WILLIAMS, PAUL
ECHOLS, MICHAEL MCKINNEY,
CHARLES MORGAN, ANTONIO
WARD,

     Plaintiffs,

v.

                            Civil Action No. 3:04-cv-917-J-32TJC

JAMES V. CROSBY, JR., and MICHAEL
RATHMANN, each in his official capacity
and his individual capacity, and BRADLEY
CARTER, GEORGE SAPP, STEPHEN
SIRMONES, JOE LAZENBY JR., ALLEN
CLARK, MARK REDD, KEITH
MUSSELMAN, TONY ANDERSON,
JAMES WILSON, WILLIAM MUSE,
COLIN HALLE, STEVEN TRICOCCI,
TIM CHASTAIN, RODNEY BARNETT,
RONNIE BARTON, KENNETH LAMPP,
WENDELL WHITEHURST, STACEY
GREEN, DAVID REYNOLDS, JOHN
RIGGS, GLYNN REEDER, JOHN RIZER,
OSCAR SHIPLEY, DEAN ELLIS,
JEFFREY LINDSEY, BILLY JARVIS,
each in his individual capacity,

     Defendants.

## SECOND AMENDED COMPLAINT

     Plaintiffs, Jeremiah Thomas, Eugene Ulrath, Sylvester Butler, Curt Massie, Kelvin

Frazier, Reginald Williams, Paul Echols, Michael McKinney, Charles Morgan, and Antonio

Ward, file this Second Amended Complaint against Defendant James V. Crosby, Jr. in his

official capacity as Secretary of the Florida Department of Corrections and in his individual

capacity, Michael Rathmann in his official capacity as Warden of the Florida State Prison and in his individual capacity, and against Bradley Carter, George Sapp, Stephen Sirmones, Joe Lazenby Jr., Allen Clark, Mark Redd, Keith Musselman, Tony Anderson, James Wilson, William Muse, Colin Halle, Steven Tricocci, Tim Chastain, Rodney Barnett, Ronnie Barton, Kenneth Lampp, Wendell Whitehurst, Stacey Green, David Reynolds, John Riggs, Glynn Reeder, John Rizer, Oscar Shipley, Dean Ellis, Jeffrey Lindsey, and Billy Jarvis, in their individual capacities. Plaintiffs allege the following:

## **Preliminary Statement**

1. Plaintiffs seek injunctive and declaratory relief and compensatory and punitive damages for violations of their right to be free from cruel and unusual punishment as secured to them by the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Plaintiffs allege that they are the victims of Defendants' pattern and practice of using chemical agents as instruments of punishment and torture and in an excessive and unlawful manner against inmates at Florida State Prison.

2. Plaintiffs seek damages against the Florida State Prison correctional officer Defendants who intentionally used chemical agents against the Plaintiffs maliciously and sadistically for the purpose of causing harm and not in a good faith effort to maintain or restore order, and the supervisor Defendants at Florida State Prison who participated, facilitated, encouraged, or acquiesced in the correctional officers' abuse of the Plaintiffs.

3. Plaintiffs seek a declaratory judgment that the policies, practices and customs that Defendants Crosby and Rathmann implement, endorse, and enforce at Florida State Prison as the Secretary of the Florida Department of Corrections and the current Warden at Florida State

2

Prison concerning the use of chemical agents violate the Eighth and Fourteenth Amendments to the Constitution of the United States of America because they place Plaintiffs at an unreasonable risk of being unlawfully abused with chemical agents, and corresponding injunctive relief requiring Defendants Crosby and Rathmann to cease their unlawful conduct and to implement measures to prevent its continuation at Florida State Prison.

4.    Plaintiffs are entitled to attorneys' fees and costs as the prevailing party in accordance with applicable law.

## Jurisdiction

5.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 in that this is a civil action arising under the Constitution of the United States.

6.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under color of state law, of rights secured to the Plaintiffs by the Eighth and Fourteenth Amendments to the Constitution of the United States.

7.    The Plaintiffs' claims for relief are predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to the Plaintiffs by the Constitution and laws of the United States.

8.    The Plaintiffs' claims for attorneys' fees and costs is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

9.    All Plaintiffs have fully exhausted their administrative remedies.

## Venue

10.    Venue is proper in this District under 28 U.S.C. § 1391(b) because at least one of

3

the Defendants resides in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

## Parties

11.    Plaintiff Jeremiah Thomas is a prisoner currently incarcerated at Union Correctional Institution, located in Union County, Florida.  When the events giving rise to his claim occurred, he was incarcerated at Florida State Prison, located in Bradford County, Florida.

12.    Plaintiff Eugene Ulrath is a prisoner currently incarcerated at Charlotte Correctional Institution in Charlotte County, Florida.  When the events giving rise to his claim occurred, he was incarcerated at Florida State Prison in Bradford County, Florida.

13.    Plaintiff, Sylvester Butler, is a prisoner currently incarcerated at Santa Rosa Correctional Institution in Santa Rosa County, Florida.  When the events giving rise to his claim occurred, he was incarcerated at Florida State Prison, located in Bradford County, Florida.

14.    Plaintiff Curt Massie is a prisoner currently incarcerated at Avon Park Correctional Institution in Polk County, Florida. When the events giving rise to his claim occurred, he was incarcerated at Florida State Prison, located in Bradford County, Florida.

15.    Plaintiff, Kelvin Frazier is a prisoner currently incarcerated at Santa Rosa Correctional Institution in Santa Rosa County, Florida.  When the events giving rise to his claim occurred, he was incarcerated at Florida State Prison, located in Bradford County, Florida.

16.    Plaintiff, Reginald Williams, is a prisoner currently incarcerated at Santa Rosa Correctional Institution in Santa Rosa County, Florida.  When the events giving rise to his claim occurred, he was incarcerated at Florida State Prison in Bradford County, Florida.

17.    Plaintiff, Paul Echols, is a prisoner currently incarcerated at Florida State Prison

4

in Bradford County, Florida, where the events giving rise to his claim occurred.

18.     Plaintiff, Michael McKinney, is a prisoner currently incarcerated at Florida State Prison in Bradford County, Florida, where the events giving rise to his claim occurred.

19.     Plaintiff, Charles Morgan, is a prisoner currently incarcerated at Florida State Prison in Bradford County, Florida, where the events giving rise to his claim occurred.

20.     Plaintiff, Antonio Ward, is a prisoner currently incarcerated at Florida State Prison in Bradford County, Florida, where the events giving rise to his claim occurred.

21.     Defendant, James V. Crosby, Jr. was the Warden of Florida State Prison from February 1998 to July 18, 2001. Thereafter, he was the Regional Director for Region II of the Florida Department of Corrections, which includes Florida State Prison, until assuming his current position as Secretary of the Florida Department of Corrections in January 2003. He is sued in his individual capacity for his actions as Warden and in his official capacity for his actions as Secretary.

22.     Defendant, Michael Rathmann, is currently the Warden of Florida State Prison. He has held that position since May 2004. He is sued in his individual and official capacities.

23.     Defendant, Bradley Carter, was the Warden of Florida State Prison from July 18, 2001 to October 1, 2002. He is sued in his individual capacity.

24.     Defendant, George Sapp, was an Assistant Warden employed at Florida State Prison from August 2, 1999 to November 1, 2000. He is sued in his individual capacity.

25.     Defendant, Stephen Sirmones, was an Assistant Warden employed at Florida State Prison from June 30, 2000 to November 7, 2002. He is sued in his individual capacity.

26.     Defendant, Joe Lazenby Jr., was an Assistant Warden employed at Florida State

Prison from September 7, 2001 to January 30, 2003.  He is sued in his individual capacity.

27.     Defendant, Allen Clark, was a Correctional Officer Major and/or Colonel employed at Florida State Prison at all times material to this action.  He is sued in his individual capacity.

28.     Defendant Mark Redd was a Correctional Officer Colonel employed at Florida State Prison from September 18, 1998 to June 28, 2001.  He is sued in his individual capacity.

29.     Defendant, Keith Musselman, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action.  He is sued in his individual capacity.

30.     Defendant, Tony Anderson, was a Correctional Officer Lieutenant employed at Florida State Prison at all times material to this action.  He is sued in his individual capacity.

31.     Defendant, James Wilson, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action.  He is sued in his individual capacity.

32.     Defendant, William Muse, was a Correctional Officer Captain employed at Florida State Prison at all times material to this action.  He is sued in his individual capacity.

33.     Defendant, Colin Halle, was a Correctional Officer Lieutenant employed at Florida State Prison at all times material to this action.  He is sued in his individual capacity.

34.     Defendant, Steven Tricocci, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action.  He is sued in his individual capacity.

35.     Defendant, Tim Chastain, was a Correctional Officer Captain employed at Florida State Prison at all times material to this action.  He is sued in his individual capacity.

36.     Defendant, Rodney Barnett, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action.  He is sued in his individual capacity.

6

37.     Defendant, Ronnie Barton, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

38.     Defendant, Kenneth Lampp, was a Correctional Officer Captain employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

39.     Defendant, Wendell Whitehurst, was a Correctional Officer Duty Warden and Assistant Warden employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

40.     Defendant, Stacey Green, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

41.     Defendant, David Reynolds, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

42.     Defendant, John Riggs, was a Correctional Officer Captain employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

43.     Defendant, Glynn Reeder, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

44.     Defendant, John Rizer, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

45.     Defendant, Oscar Shipley, was a Correctional Officer Sergeant employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

46.     Defendant, Dean Ellis, was a Correctional Officer Captain employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

47.     Defendant, Jeffrey Lindsey, was a Correctional Officer Sergeant employed at

7

Florida State Prison at all times material to this action. He is sued in his individual capacity.

48.    Defendant, Billy Jarvis, was a Major and/or Duty Warden employed at Florida State Prison at all times material to this action. He is sued in his individual capacity.

49.    At all times relevant to the events described herein, the Defendants were acting under color of state law.

## Factual Allegations

50.    Employees of the Florida Department of Corrections are authorized to use a variety of types of force where the circumstances warrant, including hands-on physical force, chemical agents, electronic immobilization devices, batons, and specialty munitions, as described in Rule 33-602.210, Florida Administrative Code.

51.    Rule 33-602.210(14), F.A.C., provides that three types of chemical agents may be used against prisoners: 1. Oleoresin Capsicum (pepper spray), 2. Orthochlorbenzal Malononitrile or Orthochlorobenzylidene Malononitrile (CS tear gas), and 3. Cloroacetophene (CN tear gas).

52.    As described in Rule 33-602.210(14), F.A.C., each of these chemical agents causes, and is intended to cause, intense physical pain and fear when used against human beings. The physical effects described by the Rule are as follows: (a) OC pepper spray "causes tearing and involuntary closing of the eyes, nasal discharge, sneezing, disorientation, and the sensation of respiratory distress;" (b) CS tear gas "causes eyes to burn and tear, nasal discharge, and skin and upper respiratory irritation;" and (c) CN tear gas "causes tearing of the eyes, nasal discharge, and skin and upper respiratory irritation."

53.    Despite the physical effects of chemical agents, Florida Department of Corrections policy, implemented by Defendant Crosby, permits and encourages use of chemical

8

agents against inmates in confinement with severe mental health needs, respiratory disorders, and other vulnerabilities.

54.     Florida State Prison is an institution that the Florida Department of Corrections has designated to house inmates with severe mental health needs who are assigned to Close Management confinement status. These inmates are generally housed alone in cells with limited ventilation and, in most cases, solid doors.

55.     The pattern and practice of using chemical agents as a means of inflicting physical pain, torture, and injury on Florida State Prison inmates began in 1999 under the supervision of Defendant Crosby, continued under Defendant Carter, and currently continues under Defendant Rathmann. This pattern and practice became more widespread when Defendant Crosby became the Secretary of the Florida Department of Corrections.

56.     As a result of this pattern and practice of using chemical agents to inflict pain, torture, and injury, the Plaintiffs suffered severe injuries to their skin, eyes, lungs, or mental health.

57.     The excessive and unjustified use of chemical agents against Plaintiffs Thomas, Ulrath, Butler, Massie, Frazier, Williams, Echols, McKinney, Morgan, and Ward is part of a pattern of hundreds of improper uses of force against Florida State Prison inmates, which both increases Defendants' awareness of the risk of harm to Plaintiffs and gives rise to the virtual certainty that Plaintiffs will again be unlawfully abused with chemical agents.

58.     Prior to 2000, the primary methods of force used against inmates at Florida State Prison were cell extractions and hands-on physical force. After an investigation and trial of several correctional officers involved in the brutal death of inmate Frank Valdes, chemical

agents replaced hands-on physical force as the primary use of force at Florida State Prison.

59.     Chemical agents were used 238 times in 2000, 385 times in 2001, and 447 times in 2002. This represents an 87% increase in the use of chemical agents over this period of time. Use of chemical agents at FSP again increased in 2003, to 611 times, or a 157% increase since 2000. Due to a number of factors, including the filing of two federal court actions against the Florida Department of Corrections arising out of the excessive use of chemical agents and the transfer of hundreds of severely mentally ill inmates at Florida State Prison to nominal mental health units (in which chemical agents are not used non-spontaneously) in another institution, the use of chemical agents declined to 277 in 2004. On information and belief, the numbers of uses of chemical agents at Florida State Prison have risen again in 2005.

60.     As Defendants have escalated the use of chemical agents, inmates at Florida State Prison, including Plaintiffs, have increasingly complained that correctional officers were using chemical agents as a means of retaliating against them for lawful activities, such as seeking assistance, asking that staff follow the established rules, filing grievances, or otherwise complaining about their conditions of incarceration. These complaints increased Defendants' knowledge of the risk of harm to Plaintiffs.

61.     Defendants were indifferent to the increase in complaints of abuse and in the number of uses of chemical agents despite the fact that they knew that correctional officers used and distributed illegal steroids, which increase aggression and can cause anger management problems. Defendants knew that correctional officers using steroids could experience effect such as extreme mood swings, feelings of extreme confidence and invincibility, delusions, extreme irritability, violent outbursts, impaired judgment, and depression, all of which increase

10

the risk of harm to Plaintiffs.

62.     Consistent with the unwritten policy of using chemical agents as punishment and torture, Defendants Crosby, Carter, Sapp, Sirmones, Lazenby and Rathmann, the highest administrative and security officials at Florida State Prison, took no action to stop either the use of steroids or the systematic abuse of inmates at Florida State Prison.

63.     Consistent with the unwritten policy of using chemical agents as punishment and torture, Defendants Crosby, Carter and Rathmann have promoted officers who were using chemical agents with increasing frequency, even though there were rising numbers of complaints of abuse against those same officers.

64.     Consistent with the unwritten policy of using chemical agents as punishment and torture, Defendants Crosby, Carter and Rathmann have failed to train, supervise and discipline correctional officers to prevent the excessive and unjustified use of chemical agents against Florida State Prison inmates, including Plaintiffs.

65.     Consistent with the unwritten policy of using chemical agents as punishment and torture, Defendant Crosby has encouraged the abuse of inmates by promoting and protecting officers who engaged in unlawful activity, including felony steroid distribution, misuse of state property, and aggression against inmates and staff.

66.     Defendant Crosby knows that several Florida State Prison correctional officers, including Defendant Shipley, have abused inmates because the Florida State Prison Warden who preceded Defendant Crosby identified these correctional officers prior to leaving his position. Defendant Crosby did not investigate the conduct of these correctional officers and he took no action to protect inmates, including Plaintiffs, from the unreasonable risk that these aggressive

11

correctional officers posed to inmates' safety.

67.     Defendants Redd, Clark and Jarvis held the most senior security staff positions at Florida State Prison between 1999 and 2002 and, with the support of Defendants Crosby, Carter, Sapp, Sirmones, and Lazenby, were responsible for direct supervision of the correctional officers who were using chemical agents.

68.     Defendants Crosby, Carter, Sapp, Sirmones, Lazenby, Redd, Clark, Jarvis and Rathmann, actively encouraged the security staff to use chemical agents to humiliate and abuse prisoners and frequently authorized the use of chemical agents with full knowledge that the force was being used solely to inflict pain, including against Plaintiffs.

69.     Defendants Crosby, Carter, Sapp, Sirmones, Lazenby, Redd, Clark, Jarvis and Rathmann routinely authorized the use of chemical agents, including against Plaintiffs, without taking steps to ensure that the use of force was consistent with constitutional standards and Rule 33-602.210, F.A.C..

70.     Rule 33-602.210(2), F.A.C., provides in part that "All authorized use of force incidents will be videotaped in their entirety." This part of the rule was added after correctional officers under the supervision of Defendant Crosby, then Warden of Florida State Prison, beat inmate Frank Valdes to death at Florida State Prison in July 1999.

71.     Despite widespread complaints of misuse of chemical agents, while Warden of Florida State Prison, Defendant Crosby advocated for and implemented a policy of not videotaping the non-spontaneous and planned use of chemical agents when directed at an inmate who is in his or her cell. He implemented this malignant policy even though he knew that video cameras were available at the prison and every other type of force was required to be videotaped

12

for review.  In response to Defendant Crosby's advocacy, the former Secretary of the Florida
Department of Corrections promulgated a rule that exempted chemical agents from the
videotaping requirements.  Defendants Carter and Rathmann have continued this policy at
Florida State Prison.

72.    Defendants Crosby, Carter, and Rathmann know of the risks associated with not
videotaping uses of force against inmates, particularly in the face of widespread complaints of
abuse.  The policy of not videotaping uses of chemical agents is intended to avoid creating a
record that would allow meaningful review of the use of chemical agents

73.    Inmates who believe that they have been the victim of unjustified use of chemical
agents can grieve the issue. The grievance process consists of three steps: an informal appeal to
the responsible local official, a formal appeal at the prison level, and a formal appeal to the
Secretary of the Florida Department of Corrections, Defendant Crosby in his official capacity.

74.    None of the grievances Plaintiffs have filed have resulted in a finding that
chemical agents were used without justification or to excess.

75.    At Florida State Prison, Defendants Crosby, Carter, Sapp, Sirmones, Lazenby and
Rathmann have reviewed numerous inmate grievances alleging abuse with chemical agents.
Consistent with the unwritten policy of using chemical agents for punishment and torture, they
have failed to follow up on grievances alleging abuse with chemical agents, and have failed to
take action even when Department of Corrections Inspector General's Office determined that a
complaint should be resolved at the institutional level.

76.    Consistent with the unwritten policy of using chemical agents for punishment and
torture, Defendant Crosby has failed to investigate and has ignored the complaints of the

13

prisoners who were seeking relief from the officers who were using chemical agents against them for improper reasons.

77.     On information and belief, and consistent with the unwritten policy of using chemical agents for punishment and torture, Defendants Crosby, Carter, Sapp, Sirmones, Lazenby, and Rathmann, who are responsible for making a recommendation as to whether the use of force should be approved or disapproved,  have never once recommended that the use of chemical agents be disapproved.

78.     On information and belief, and consistent with the unwritten policy of using chemical agents for punishment and torture, Defendants Crosby, Carter, Sapp, Sirmones, Lazenby and Rathmann have never requested a special investigation into the emerging pattern of increased use of chemical agents and the corresponding claims that these weapons were being used to abuse and injure Florida State Prison inmates, including Plaintiffs.

79.     As Secretary, Defendant Crosby has created, encouraged, implemented, and enforced the policies and practices of not videotaping the use of chemical agents, of failing to meaningfully investigate allegations of abuse of inmates with chemical agents, of promoting security and administrative staff with disciplinary records that indicate a high risk of aggression and other misconduct, and of failing to exempt vulnerable inmates from the non-spontaneous use of chemical agents at the Florida State Prison.

80.     As a result of Defendant Crosby's actions as Secretary, the use of chemical agents has steadily increased since 1999 and, on information and belief, currently represents the majority of all uses of force within the Florida Department of Corrections.

81.     As Secretary, Defendant Crosby knows that inmates, including those with severe

14

mental illness and respiratory disorders, are abused with chemical agents at Florida State Prison.

82.     As Secretary, Defendant Crosby has the ability to end the unjustified and excessive use of chemical agents against Plaintiffs at Florida State Prison by a variety of means, including but not limited to: (1) requiring all non-spontaneous uses of chemical agents to be videotaped, (2) abolishing all non-spontaneous uses of chemical agents on inmates diagnosed with or objectively manifesting the symptoms consistent with a mental illness, (3) abolishing all non-spontaneous uses of chemical agents on inmates with medical conditions, such as asthma, which increase the risk of harm if chemical agents are used, (4) training staff in the use of techniques to calm inmates who are upset without the need for any kind of force, (5) requiring the use of staff specially trained to defuse confrontations prior to the non-spontaneous use of chemical agents, and (6) requiring adequate and meaningful review and monitoring of all uses of chemical agents. His failure to take any of these actions places Plaintiffs at a continuing risk of being abused with chemical agents again.

### Jeremiah Thomas

83.     Plaintiff Thomas is a 33-year-old man with an extensive history of psychiatric problems. He suffers from Schizoaffective Disorder, which causes him to experience auditory hallucinations and bouts of mania during which he does not sleep for days and makes rhythmic noises by talking to himself or banging on his cell walls and door. Since his incarceration in 1991, he has been civilly committed to the Correctional Mental Health Institution several times, frequently admitted for inpatient mental health treatment, and is currently housed in the inpatient Transitional Care Unit at Union Correctional Institution. Defendants knew in 2000 and currently know that Plaintiff Thomas was and is severely mentally ill.

15

84.     Plaintiff Thomas has been diagnosed with asthma, a medical condition that causes inflammation of the lungs and reduced breathing capacity. Defendants knew in 2000 and currently know that Plaintiff Thomas has asthma.

85.     In 2000, Plaintiff Thomas was classified as an S-3, the most serious outpatient psychiatric classification, assigned to inmates with very acute mental health needs.

86.     Throughout 2000, Defendants repeatedly abused Plaintiff Thomas with chemical agents and issued Plaintiff Thomas disciplinary reports because he was demonstrating symptoms of his mental illness.

87.     Repeatedly, in 2000, Plaintiff Thomas was determined to be not mentally competent at the time of the disciplinary reports and he was repeatedly transferred between Florida State Prison and the inpatient unit at Union Correctional Institution.

88.     At Florida State Prison on September 20, 2000, at approximately 11:20 a.m., Plaintiff Thomas cut and mutilated his forearm. He was seen by mental health staff and he asked for help.

89.     On September 20, 2000, at approximately 3:00 p.m., mental health staff saw Mr. Thomas again.

90.     On September 20, 2000, Defendant Musselman sprayed a large quantity of pepper spray into Plaintiff Thomas' cell without first issuing any orders or warnings. This force was used at the direction of Defendant Anderson and with the authorization of Defendant Clark.

91.     In order to cover up the excessive quantity of chemical agents he used, Defendant Musselman wrote a report stating that he used only three 1-second bursts of chemical spray. This statement is false.

16

92.     The next day, September 21, 2000, Plaintiff Thomas was in his cell when Defendant Wilson sprayed a large amount of pepper spray into Plaintiff Thomas' cell without warning. This was at the direction of Defendant Muse and with the authorization of Defendant Clark.

93.     In his Use of Force report Defendant Wilson falsely stated that he used only three 1-second bursts of spray. This is a false statement designed to cover up the grossly excessive quantities of chemical agents used.

94.     Two days later, September 23, 2000, Plaintiff Thomas was in his cell when Defendant Wilson failed to issue any warnings or orders to Plaintiff Thomas before spraying him with both pepper spray and tear gas. This force was used at the direction of Defendant Halle and with the authorization of Defendant Clark.

95.     Again, Defendant Wilson wrote a false Use of Force Report stating that he had used only three 1-second bursts of both pepper spray and CN tear gas to cover up the fact that he used great quantities of chemical agents that soaked Plaintiff Thomas's entire body.

96.     The next day, on September 24, 2000, Defendant Tricocci sprayed Plaintiff Thomas with chemical agents without first issuing any orders or warnings. This force was used at the direction of Defendant Chastain and with the authorization of Defendant Clark. This was the fourth time in five days that Defendant Clark authorized the use of force against Plaintiff Thomas.

97.     In his Use of Force Report, Defendant Tricocci falsely stated that he used only three 1-second bursts of spray on Plaintiff Thomas.

98.     During this time Plaintiff Thomas was experiencing an acute psychiatric

17

breakdown and was in need of mental health care. During the post-use of force exam conducted by a nurse at approximately 3:00 p.m., Plaintiff Thomas exhibited disturbing signs of psychosis. The nurse noted that Plaintiff Thomas told her that he played professional football with the Dolphins in Philadelphia. She also noted that Plaintiff Thomas smelled like urine.

99.    Plaintiff Thomas was severely burned by the excessive amount of chemical agents used on September 20, 21, 23 and 24, 2000. He had painful blisters and open wounds on his ear and neck, abdomen, left arm, upper back and lower right leg.

100.    In addition to the intense burning sensation and second-degree burns, each time they sprayed Plaintiff Thomas he could barely breathe and was left taking little gasps of air for days afterward. He felt like he was going to die and he frequently wept from the pain.

101.    On September 25, 2000, Defendant Sapp, at that time the Assistant Warden at Florida State Prison, reviewed and approved the uses of force on Plaintiff Thomas from September 20, 21, 23 and 24, 2000. After reviewing these reports, he was aware that Plaintiff Thomas was having symptoms of psychosis and mania and that he had blisters and burns all over his body. Despite this knowledge, he took no action to prevent the further use of force against Plaintiff Thomas or to ensure that he received proper mental health treatment.

102.    On September 25, 2000, Plaintiff Thomas was in his cell when Defendant Barnett sprayed Plaintiff Thomas with chemical agents three separate times without ever issuing any orders or warnings. This force was used at the direction of Defendant Chastain and with the authorization of Defendant Whitehurst.

103.    Defendant Barnett falsified his Use of Force Report to cover up the grossly excessive quantities of pepper spray, CN tear gas, and CS tear gas he used on Plaintiff Thomas.

18

104.    The following day, September 26, 2000, Defendant Barton sprayed a large amount of pepper spray into Plaintiff Thomas' cell. No orders or warnings were issued beforehand. This force was used at the direction of Defendant Lampp and with the authorization of Defendant Whitehurst.

105.    Defendant Barton wrote a Use of Force Report that falsely stated that he used only three 1-second bursts of chemical spray on Plaintiff Thomas.

106.    Each of the Defendants on the security staff who were involved in using or authorizing the use of chemical agents against Plaintiff Thomas on September 20, 21, 23, 24, 25 and 26, 2000, including Defendants Musselman, Anderson, Clark, Wilson, Muse, Halle, Tricocci, Chastain, Barnett, Barton, Lampp, Sapp, and Whitehurst, were aware that Plaintiff Thomas was exhibiting signs of psychosis and was in need of mental health care.

107.    In order to avoid creating a record that would allow meaningful review of the use of chemical agents against Plaintiff Thomas, Defendants repeatedly failed to videotape the use of chemical agents against him, even though these were not spontaneous uses of force and there was ample time to obtain a video camera.

108.    Each use of chemical agents against Plaintiff Thomas was approved without a formal investigation. On September 27, 2000, Mr. Thomas was evaluated in the medical clinic and admitted to the infirmary for treatment for his chemical burns. He was also placed on psychiatric observation due to his psychotic and manic behavior. Medical notes indicate that he exhibited multiple signs of psychiatric decompensation, including severe psychomotor agitation, loud and pressured speech, extreme and unpredictable mood swings, disorganized thinking and memory impairment.

19

109.    On September 29, 2000, Plaintiff Thomas was transferred to the Crisis
Stabilization Unit at Union Correctional Institution for intensive mental health treatment.

110.    It took over six months for Mr. Thomas' mental condition to stabilize after the
repeated and unjustified use of force against him in lieu of proper mental health treatment.

111.    Defendants' policy and practice of unlawfully punishing inmates with chemical
agents, as well as their malicious and sadistic intent to harm Plaintiff Thomas, is further
demonstrated by their unrelenting and repeated use of chemical agents against him at Florida
State Prison.  Prior to the use of chemical agents against Plaintiff Thomas on six days in
September 2000, chemical agents were used against him thirteen times at Florida State Prison.

112.    Plaintiff Thomas was more vulnerable to being permanently harmed by the use of
chemical agents in September 2000 because Defendants had used chemical agents against him
on the following thirteen prior occasions, which further evidence Defendants' malicious intent to
harm Plaintiff Thomas:

      a.  Defendant Anderson on December 29, 1999.

      b.  Defendant Reeder on February 9, 2000.

      c.  Non-defendant officers on February 11, 2000.

      d.  Defendants Muse and Redd on February 27, 2000.

      e.  Defendants Reeder, Muse and Sapp on March 1, 2000.

      f.  Defendants Reeder, Lampp, and Sapp on July 13, 2000.

      g.  Defendants Halle, Lampp, and Sapp on July 18, 2000.

      h.  Defendants Reeder, Chastain and Sapp on July 20, 2000.

      i.  Defendants Muse and Sapp on July 21, 2000.

20

      j.   Defendants Riggs and Sapp on July 23, 2000, at 2:55am.

      k.   Defendant Sapp on July 23, 2000, at 5:22pm.

      l.   Defendants Barton, Lampp, and Whitehurst on July 26, 2000.

      m.  Defendants Halle and Sirmones on August 3, 2000.

113.   Defendants knew that the uses of force on Plaintiff Thomas were not necessary to maintain or restore order.

114.   Although Defendant Crosby knew that Plaintiff Thomas was mentally ill and that he faced an unreasonable risk of again being seriously harmed with chemical agents if returned to Florida State Prison, Plaintiff Thomas was returned to Florida State Prison on June 18, 2003.

115.   Plaintiff Thomas was again abused with chemical agents on July 20, 2003 and July 22, 2003 which caused him to experience physical pain and burning, as well as extreme psychological trauma.

116.   Defendant Ellis participated in the use of chemical agents against Plaintiff Thomas on July 20, 2003, which contributed to and aggravated Plaintiff Thomas' injuries.

117.   Defendants' policy and practice of unlawfully punishing inmates with chemical agents, as well as their malicious and sadistic intent to harm Plaintiff Thomas, is demonstrated by their unrelenting and repeated use of chemical agents against him at Florida State Prison.

118.   Plaintiff Thomas has been housed in inpatient status since July 31, 2003, immediately after being tortured with chemical agents in July of 2003.

119.   Plaintiff Thomas was traumatized by the abuse that he suffered at Florida State Prison and he is terrified to return there.

120.   Although he is currently housed in an inpatient mental health unit, Plaintiff

Thomas is currently classified as a Close Management inmate and it is likely that he will continue in that classification for many years.

121.    Defendant Crosby has authority to transfer Plaintiff Thomas to Florida State Prison. Defendant Crosby's practice is to return an inmate classified as Close Management to a Close Management institution when he or she is released from inpatient status. Because Plaintiff Thomas is severely mentally ill, it is likely that Defendant Crosby will transfer him to Florida State Prison. Plaintiff Thomas is afraid that he will be sprayed again with chemical agents if he is returned to Florida State Prison in the future.

122.    Although Defendant Crosby knows that Plaintiff Thomas has repeatedly been abused with chemical agents at Florida State Prison, he remains deliberately indifferent to the high numbers of non-spontaneous uses of chemical agents and of complaints that mentally ill inmates are abused with chemical agents when they are objectively manifesting the symptoms consistent with a mental illness at Florida State Prison.

123.    Plaintiff Thomas was tortured with chemical agents as a direct result of Defendant Crosby's policies and practices, including his policy to allow the non-spontaneous use of chemical agents against inmates diagnosed with or objectively manifesting the symptoms consistent with a mental illness and against inmates with asthma, and his policy not to require videotaping of the non-spontaneous use of chemical agents at Florida State Prison.

124.    Because these policies and Defendant Crosby's other policies and practices that permit and encourage officers to abuse Plaintiff Thomas have not changed, Plaintiff Thomas faces an unreasonable and continuing risk of again being seriously harmed either with chemical agents under circumstances similar to those described in this Complaint or by the fact of his

return if he is housed at Florida State Prison again.

125.    Plaintiff Thomas has exhausted all available administrative remedies regarding the matters described herein.

### Eugene Ulrath

126.    Plaintiff Ulrath is a 42-year old man with an extensive history of psychiatric problems, including severe depression, dating from childhood to the present.

127.    Plaintiff Ulrath was transferred to Florida State Prison on October 8, 2002. At that time he was classified as an S-3, the most serious outpatient psychiatric classification, assigned to inmates with very acute mental health needs.

128.    Defendants knew in 2002 and currently know that Plaintiff Ulrath was and is mentally ill.

129.    The same day he arrived, October 8, 2002, Plaintiff Ulrath sought mental health care by declaring a psychological emergency to several members of the security staff and to two different nurses on the wing. Every single one of his requests was ignored.

130.    A few hours after his last attempt to declare a psychological emergency, Plaintiff Ulrath was lying quietly in his cell when Defendant Shipley repeatedly sprayed Plaintiff Ulrath with pepper spray and tear gas under the supervision of Defendant Ellis and with the authorization of Defendant Jarvis.

131.    The Defendants gave no warnings or orders to Plaintiff Ulrath before using chemical agents against him.

132.    Defendant Shipley authored a Use of Force Report alleging that Plaintiff Ulrath was sprayed because he was causing a disturbance on the wing by kicking his cell door and

encouraging other inmates to do the same. He further stated that he only used a total of six one-second bursts of pepper spray and three one-second bursts of tear gas.

133. The Use of Force report is a false statement of Plaintiff Ulrath's conduct and of the amount of gas used.

134. The next day, October 9, 2002, Plaintiff Ulrath was again quiet in his cell when Defendant Lindsey, under the supervision of Defendant Lampp and with the authorization of Defendant Jarvis, sprayed him with chemical agents without warning.

135. In an effort to cover up this malicious use of force, Defendant Lindsey wrote a Use of Force Report that stated Plaintiff Ulrath was kicking on his cell door and refusing all orders to stop. He also stated that he only used a total of six one-second bursts of pepper spray and three one-second bursts of tear gas.

136. This Use of Force Report is false and is designed to conceal the unlawful nature of Defendants Lindsey, Lampp, and Jarvis' vindictive use of force on Plaintiff Ulrath because they knew he was having psychological problems.

137. Plaintiff Ulrath is currently classified as a Close Management inmate and he is likely to continue in that classification for many years.

138. Defendants knew that the uses of force on Plaintiff Ulrath were not necessary to maintain or restore order.

139. As a result of the abusive treatment on the preceding days and as a result of the injuries he sustained, on October 10, 2002, Plaintiff Ulrath attempted to commit suicide by hanging himself with his bed sheet. He was placed in a special suicide observation cell.

140. As a result of being exposed to an excessive quantity of chemical agents, Plaintiff

24

Ulrath suffered chemical burns and developed large blisters on his back, buttock and leg.

141.    On October 13, 2002, Plaintiff Ulrath was quiet in his cell when, contrary to Florida Department of Corrections' policy, Defendant Shipley had Plaintiff Ulrath's cell door opened, entered Plaintiff Ulrath's cell alone, and threatened Plaintiff Ulrath, thereby inflicting further injury.

142.    Plaintiff Ulrath was transferred to inpatient mental health unit at Union Correctional Institution, where he was housed for years. Plaintiff Ulrath is currently housed in outpatient status.

143.    Plaintiff Ulrath was traumatized by the abuse that he suffered at Florida State Prison and maintains that he will commit suicide rather than return to Florida State Prison.

144.    Defendant Crosby has authority to transfer Plaintiff Ulrath to Florida State Prison.

145.    Because Plaintiff Ulrath has a history of severe mental illness, it is likely that he will again be housed at Florida State Prison.

146.    Plaintiff Ulrath was tortured with chemical agents as a direct result of Defendant Crosby's policies and practices, including his policy to allow the non-spontaneous use of chemical agents against inmates diagnosed with or objectively manifesting the symptoms consistent with a mental illness, and his policy not to require videotaping of the non-spontaneous use of chemical agents at Florida State Prison.

147.    Because these policies and Defendant Crosby's other policies and practices that permit and encourage officers to abuse Plaintiff Ulrath have not changed, Plaintiff Ulrath faces an unreasonable and continuing risk of again being seriously harmed with chemical agents under circumstances similar to those described in this Complaint or by the fact of his return if he is

25

again housed at Florida State Prison.

148.    Plaintiff Ulrath has exhausted his administrative remedies regarding the matters described herein.

**Sylvester Butler**

149.    Plaintiff Butler is a 42-year old man with a history of psychiatric problems. He is borderline developmentally disabled.

150.    In October of 2000, Plaintiff Butler was classified as an S-3, the most serious outpatient psychiatric classification, assigned to inmates with very acute mental health needs.

151.    Defendants knew that Plaintiff Butler was mentally ill.

152.    On October 3, 2000, while at Florida State Prison, Plaintiff Butler sought medical attention by declaring a medical emergency to security staff.

153.    In response, Defendants Chastain and Reeder turned off the exhaust fans, approached his cell, unlocked the food flap and Defendant Reeder began spraying chemical agents into the cell. The can used was approximately the size of a fire extinguisher, with a long hose and nozzle that was inserted into the cell.

154.    Despite Plaintiff Butler's compliance with all orders, Defendants returned twice during the next hour and sprayed tear gas into his cell. No warnings were given before chemical agents were used.

155.    Defendants did not take Plaintiff Butler to the shower so he could rinse off the chemicals.

156.    Defendant Clark authorized this use of force against Plaintiff Butler with full knowledge that it was being used solely as a means of torture and intimidation.

157.    Defendant Reeder wrote a pretextual and false Use of Force report alleging hat force was used because Plaintiff Butler was "beating on his cell door and was refusing all verbal orders from me to cease his disorderly conduct or chemical agents would be administered." He also stated that he used only three 1-second bursts of pepper spray and of tear gas.

158.    Defendant Reeder fabricated this Use of Force Report with the intention of covering up his unjustified and excessive use of chemical agents on Plaintiff Butler.

159.    In a further attempt to conceal his improper use of force, Defendant Reeder rote Plaintiff Butler a disciplinary report for disorderly conduct.

160.    Plaintiff Butler developed large, water-filled blisters on his hip. The blisters broke and Plaintiff Butler's skin peeled off, leaving his entire hip with a raw, seeping wound.

161.    Plaintiff Butler has been abused with chemical agents several times at Florida State Prison since October 3, 2000.

162.    Defendants' policy and practice of unlawfully punishing inmates with chemical agents, as well as their malicious and sadistic intent to harm Plaintiff Butler, is further demonstrated by their unrelenting and repeated use of chemical agents against him at Florida State Prison. In addition to the use of chemical agents on October 3, 2000, Defendants used chemical agents against Plaintiff Butler an additional seventeen (17) times at Florida State Prison.

163.    Defendants' use of chemical agents further evidences Defendants' malicious and sadistic intent to harm Plaintiff Butler and contributed to and aggravated Plaintiff Butler's physical and mental injuries on the following seventeen occasions:

        a.    Defendants Reeder, Lampp and Sapp on April 28, 2000.

27

    b.  Defendants Musselman, Anderson and Whitehurst on July 5, 2000.

    c.  Defendant Jarvis on December 8, 2000.

    d.  Defendant Lampp on January 2, 2001.

    e.  Defendants Reeder, Lampp and Sirmones on January 17, 2001.

    f.  Defendants Riggs and Redd on February 6, 2001.

    g.  Defendants Reeder, Lampp and Clark on March 13, 2001.

    h.  Defendants Ellis, Clark and Redd on March 16, 2001.

    i.  Defendants Ellis and Sirmones on August 5, 2001.

    j.  Defendants Reynolds, Riggs, and Sirmones on August 30, 2001.

    k.  Defendants Muse and Sirmones on August 31, 2001.

    l.  Defendants Lindsey, Lamp and Sirmones on October 16, 2001.

    m. Defendants Ellis and Lazenby on November 10, 2001.

    n.  Defendant Lazenby on May 25, 2002.

    o.  Defendants Ellis and Clark on June 4, 2002.

    p.  Defendants Ellis and Sirmones on July 3, 2002.

    q.  Defendant Sirmones on September 12, 2002.

164.   Defendants knew that the uses of force on Plaintiff Butler were not necessary to maintain or restore order.

165.   Defendant Crosby's policy and practice of using chemical agents to punish inmates throughout Florida prisons resulted in five further uses of chemical agents against Plaintiff Butler at institutions other than Florida State Prison on the following dates, which further evidences Defendants' malicious intent to harm Plaintiff Butler:  May 29, 2003;

28

December 21, 2004; December 25, 2004; March 12, 2005; and October 10, 2005.

166.    Plaintiff Butler is currently classified as a Close Management inmate and it is likely that he will continue in that classification for many years.

167.    Defendant Crosby has authority to transfer Plaintiff Butler to Florida State Prison.

168.    Because Plaintiff has a history of severe mental illness, it is likely that he again will be housed at Florida State Prison.

169.    Plaintiff Butler was tortured with chemical agents as a direct result of Defendant Crosby's policies and practices, including his policy to allow the non-spontaneous use of chemical agents against inmates diagnosed with or objectively manifesting the symptoms consistent with a mental illness and his policy not to require videotaping of the non-spontaneous use of chemical agents at Florida State Prison.

170.    Because this policy and Defendant Crosby's other policies and practices that permit and encourage officers to abuse Plaintiff Butler have not changed, Plaintiff Butler faces an unreasonable and continuing risk of again being seriously harmed with chemical agents under circumstances similar to those described in this Complaint if he is returned to Florida State Prison.

171.    Plaintiff Butler has exhausted all available administrative remedies regarding the matters described herein.

### Curt Massie

172.    Plaintiff Massie is a 46-year-old man diagnosed with Obsessive Compulsive Disorder and Delusional Disorder.  At all times material to the Complaint he was taking psychotropic medication to treat his mental illness.

29

173.   In October 2000, he was classified as an S-3, the most serious outpatient psychiatric classification, assigned to inmates with very acute mental health needs.

174.   Defendants knew in 2000 that Plaintiff Massie was mentally ill.

175.   On October 8, 2000, at Florida State Prison, Defendants Green and Halle used chemical agents on Plaintiff Massie to punish him for making a funny face behind a nurse's back.

176.   Defendants Green and Halle failed to issue any warnings or orders to Plaintiff Massie before emptying cans of pepper spray and CS tear gas into his locked cell.

177.   To justify the use of chemical agents, Defendant Green wrote a Use of Force Report stating that force was used because Plaintiff Massie had cursed at staff, screamed threats, and refused several orders to stop. He also stated that he used only three 1-second bursts of both pepper spray and tear gas.

178.   The Use of Force Report written by Defendant Green falsely states the reasons for the use of force and the amount of chemical agents used on Plaintiff Massie.

179.   Defendant Clark authorized this use of force with full knowledge that it was unjustified.

180.   When Plaintiff Massie was taken to the shower, Defendant Green turned the hot water on to intensify the pain Plaintiff Massie was experiencing from the chemical agents.

181.   Defendants failed to give Plaintiff Massie clean sheets for several hours and he was never issued a clean blanket.

182.   Plaintiff Massie suffered second-degree chemical burns that caused large fluid-filled blisters and inflamed skin on his left arm, left leg, back and hip. The blisters on Plaintiff Massie's skin later burst, leaving raw exposed skin.

30

183.    Plaintiff Massie still experiences pain and burning as a result of the residual condition of his skin.

184.    In order to avoid creating a record that would allow meaningful review of the use of chemical agents against Plaintiff Massie, Defendants Clark, Green, and Halle failed to videotape either of the incidents when chemical agents were used against him, even though these were not spontaneous uses of force and there was ample time to obtain a video camera.

185.    Plaintiff Massie has been abused with chemical agents since October 8, 2000.

186.    Defendants' policy and practice of unlawfully punishing inmates with chemical agents, as well as their malicious and sadistic intent to harm Plaintiff Massie, is further demonstrated by Defendants additional use of chemical agents against him at Florida State Prison despite his extreme reaction to chemical agents.

187.    Defendants Lampp and Lazenby used chemical agents against Defendant Massie on September 23, 2001, which further evidences Defendants' malicious intent to harm Plaintiff Massie and contributed to and aggravated Plaintiff Massie's physical and mental injuries.

188.    Defendants knew that the uses of force on Plaintiff Massie were not necessary to maintain or restore order.

189.    Defendant Crosby has authority to transfer Plaintiff Massie to Florida State Prison.

190.    Because Plaintiff Massie has a history of severe mental illness, it is likely that he will again be housed at Florida State Prison if he is again housed in Close Management.

191.    Plaintiff Massie was tortured with chemical agents as a direct result of Defendant Crosby's policies and practices, including his policy to allow the non-spontaneous use of

31

chemical agents against inmates diagnosed with or objectively manifesting the symptoms consistent with a mental illness and his policy not to require videotaping of the non-spontaneous use of chemical agents at Florida State Prison.

192.    Because this policy and Defendant Crosby's other policies and practices that permit and encourage officers to abuse Plaintiff Massie have not changed, Plaintiff Massie faces an unreasonable and continuing risk of again being seriously harmed with chemical agents under circumstances similar to those described in this Complaint if he is returned to Florida State Prison.

193.    Plaintiff Massie has exhausted all available administrative remedies regarding the matters described herein.

### Kelvin Frazier

194.    Plaintiff Frazier is a 47-year old man with asthma, a condition that causes inflammation of the lungs and reduced breathing capacity.

195.    Defendants knew in January 2001 and are currently aware that Plaintiff Frazier has asthma.

196.    On January 4, 2001, at Florida State Prison, Defendants Reynolds and Riggs sprayed Plaintiff Frazier in response to his request to speak to Defendant Riggs, a Captain.

197.    When Defendant Riggs arrived at Plaintiff Frazier's cell, instead of speaking with Plaintiff Frazier he directed Defendant Reynolds to spray pepper spray into the cell using a canister approximately the size of a fire extinguisher. No orders or warnings were issued to Plaintiff Frazier. Defendants Riggs and Reynolds continued to spray pepper spray and tear gas into Plaintiff Frazier's over the course of the next half hour.

32

198.   The quantity of chemical agents used by Defendants was so great that Plaintiff Frazier was soaking wet, as were the walls, floor, and his personal property.

199.   After exposure to chemical agents, Plaintiff Frazier had an asthma attack leaving him in respiratory distress. Blisters later formed on Plaintiff Frazier's neck and his skin started to peel. Plaintiff Frazier had second-degree chemical burns on his neck and around his left ear.

200.   In order to cover up the unjustified use of force, Defendant Reynolds wrote a Use of Force Report that falsely stated Plaintiff Frazier was "being loud and disruptive by yelling and kicking on his cell door" and that "he was ordered numerous times to cease his disruptive conduct, but to no avail." He also stated that he used only three 1-second bursts of both pepper spray and tear gas.

201.   Plaintiff Frazier's disciplinary report for disorderly conduct, written to further conceal the Defendants' unjustified use of force, was overturned on appeal.

202.   On January 11, 2001, Defendants Reeder and Lampp sprayed Plaintiff Frazier with chemical agents in retaliation for the grievances he filed about the previous week's use of force. Plaintiff Frazier received no warnings from Defendants before they sprayed chemical agents into his cell.

203.   The chemical agents aggravated the burns on Plaintiff Frazier's neck and also burned his forearms.

204.   Defendants Reeder and Lampp were aware that the use of force on Plaintiff Frazier was not necessary to maintain or restore order because Plaintiff Frazier was quiet and locked in his cell.

205.   Defendant Reeder wrote a Use of Force Report stating that he "observed Inmate

33

Frazier beating on his cell door, and [sic] was refusing all verbal orders from me to cease his disorderly conduct or chemical agents would be administered." He also stated that he sprayed only three 1-second bursts of pepper spray.

206.    This was a false report written to cover up the unjustified and excessive use of force against Plaintiff Frazier.

207.    Plaintiff Frazier has been abused with chemical agents since January 11, 2001.

208.    Defendants' policy and practice of unlawfully punishing inmates with chemical agents, as well as their malicious and sadistic intent to harm Plaintiff Frazier, is further demonstrated by Defendants use of chemical agents against him on other occasions at Florida State Prison.

209.    Defendants' use of chemical agents contributed to and aggravated Plaintiff Frazier's physical and mental injuries on the following occasions further evidences Defendants' malicious intent to harm Plaintiff Frazier:

      A.  Defendants Rizer, Muse and Whitehurst on June 10, 2000.

      B.  Defendants Muse and Clark on April 18, 2002.

210.    Defendant Crosby's policy and practice of using chemical agents to punish inmates throughout Florida prisons resulted in two further uses of chemical agents against Plaintiff Frazier at institutions other than Florida State Prison on October 22, 2002, and November 25, 2003, which further evidences Defendants' malicious intent to harm Plaintiff Frazier.

211.    Defendants knew that the uses of force on Plaintiff Frazier were not necessary to maintain or restore order.

34

212.    Plaintiff Frazier is currently classified as a Close Management inmate and it is likely that he will continue in that classification for many years.

213.    Defendant Crosby has authority to transfer Plaintiff Frazier to Florida State Prison.

214.    Plaintiff Frazier was tortured with chemical agents as a result of Defendant Crosby's policies and practices, including his policy not to require videotaping of the non-spontaneous use of chemical agents at Florida State Prison and his policy to allow correctional officers to use chemical agents against inmates with asthma.

215.    Because this policy and Defendant Crosby's other policies and practices that permit and encourage officers to abuse Plaintiff Frazier have not changed, Plaintiff Frazier faces an unreasonable and continuing risk of again being seriously harmed with chemical agents under circumstances similar to those described in this Complaint if he is returned to Florida State Prison.

216.    Plaintiff Frazier has exhausted all available administrative remedies regarding the matters described herein.

**Reginald Williams**

217.    Plaintiff Williams is a 45-year old man.

218.    On October 24, 2001, at Florida State Prison, Defendants Rizer, Reynolds and Riggs sprayed Plaintiff Williams with chemical agents while he was quiet in his cell solely in retaliation for litigation he had filed against prison officials.

219.    Defendant Lazenby authorized the use of chemical agents against Plaintiff Williams without properly determining if the use of force was necessary.

35

220.    Defendant Rizer sprayed the chemical agents directly into Plaintiff Williams' face, immediately blinding him and causing intense pain and burning.  He could not rinse his eyes because Defendants continued to spray more chemical agents into the cell.

221.    When Plaintiff Williams was finally allowed to shower, the Defendants intentionally turned on very hot water, intensifying the burning and pain on his skin and in his eyes.

222.    Defendant Rizer wrote a Use of Force Report alleging that chemical agents were used because Plaintiff Williams was being disorderly and causing a disturbance on the wing.  He also stated that he only used a total of six one-second bursts of pepper spray.

223.    This report is pretextual, false, and written to cover up the nature of Defendant Rizer's unjustified and excessive use of chemical agents on Plaintiff Williams.

224.    As a result of having chemical agents sprayed directly into his eyes, the vision in Plaintiff Williams' right eye has been permanently damaged and he now must wear glasses to see clearly.

225.    Plaintiff Williams has been abused with chemical agents since October 24, 2001.

226.    Defendants' policy and practice of unlawfully punishing inmates with chemical agents, as well as their malicious and sadistic intent to harm Plaintiff Williams, is further demonstrated by Defendants use of chemical agents against him on two other occasions at Florida State Prison.

227.    Defendants' malicious use of chemical agents contributed to and aggravated Plaintiff Williams's physical and mental injuries on the following two occasions and evidences Defendants' malicious intent to harm Plaintiff Williams:

36

      A.  Defendants Halle, Ellis and Sirmones on July 7, 2002.

      B.  Defendant Lazenby on August 22, 2002.

228.    Defendant Crosby's policy and practice of using chemical agents to punish inmates throughout Florida prisons resulted in two further uses of chemical agents against Plaintiff Williams at institutions other than Florida State Prison on October 9, 2003, and October 12, 2003, which further evidences Defendants' malicious intent to harm Plaintiff Williams.

229.    Defendants knew that the uses of force on Plaintiff Williams were not necessary to maintain or restore order.

230.    Plaintiff Williams is currently classified as a Close Management inmate and it is likely that he will continue in that classification for many years.

231.    Defendant Crosby has authority to transfer Plaintiff Williams to Florida State Prison.

232.    Plaintiff Williams was tortured with chemical agents as a result of Defendant Crosby's policies and practices, including his policy not to require videotaping of the non-spontaneous use of chemical agents at Florida State Prison.

233.    Because this policy and Defendant Crosby's other policies and practices that permit and encourage officers to abuse Plaintiff Williams have not changed, Plaintiff Williams faces an unreasonable and continuing risk of again being seriously harmed with chemical agents under circumstances similar to those described in this Complaint if he is returned to Florida State Prison.

234.    Plaintiff Williams has exhausted all available administrative remedies regarding the matters described herein.

## Paul Echols

235.   Plaintiff Echols is a 24-year-old man with a history of serious psychiatric problems including major depression. Since his incarceration, he has attempted suicide and has been admitted for inpatient mental health treatment. Prior to his incarceration, he had been civilly committed because of his severe mental health needs.

236.   Plaintiff Echols has been classified as an S-3 for the duration of his time at Florida State Prison. S-3 is the most serious outpatient psychiatric classification, assigned to inmates with very acute mental health needs.

237.   Defendants knew in 2004 and currently know that Plaintiff Echols was and is mentally ill.

238.   On May 28, 2004, correctional officers sprayed chemical agents into Plaintiff Echols' cell.

239.   The officers sprayed him in retaliation for grievances that Plaintiff Echols filed earlier in May 2004, in which Echols asked that Defendant Rathmann and the Inspector General's Office under Defendant Crosby ensure that correctional officers stop denying him his food trays.

240.   The correctional officers emptied two cans of pepper spray and CS tear gas into Plaintiff Echols' closed cell with the authorization of the Warden's office under the supervision of Defendant Rathmann.

241.   Correctional officers who sprayed Plaintiff Echols wrote a false report, which stated that they gassed him because he was kicking his door, to cover up the unlawfulness of their actions.

38

242.    After Plaintiff Echols was abused with chemical agents, Defendant Rathmann approved the unlawful use of force against him.

243.    The excessive and unauthorized use of chemical agents caused severe skin burns and Plaintiff Echols experienced chest pains and shortness of breath.

244.    On May 29, 2004, burns on the back of Plaintiff Echols' neck were suppurating so much that his bed sheets were stained.

245.    On May 30, 2004, Plaintiff Echols had blisters, skin redness, serious drainage, and open, broken blisters as a result of the chemical agents.  On June 1, 2004, Plaintiff Echols had large, water-filled blisters on his neck.

246.    Defendant Rathmann knew that Plaintiff Echols suffered these injuries.

247.    Throughout early June, Plaintiff Echols asked mental health staff for assistance several times.

248.    On June 10, 2004, Plaintiff Echols declared a medical emergency because he felt dizzy and his nose was bleeding.

249.    In response, correctional officers used an entire can of chemical agents against him, even though they could see that Plaintiff Echols' nose was bleeding.

250.    The correctional officers abused Plaintiff Echols with the authorization of the Warden's office, under the supervision of Defendant Rathmann.

251.    Defendant Rathmann approved the abuse of Plaintiff Echols on June 10, 2004.

252.    Defendants' policy and practice of unlawfully punishing inmates with chemical agents, as well as their malicious and sadistic intent to harm Plaintiff Echols, is further demonstrated by their unrelenting and repeated use of chemical agents against him at Florida

39

State Prison.

253.    Defendants' use of chemical agents further evidences Defendants' malicious intent to harm Plaintiff Echols and contributed to and aggravated Plaintiff Echols' physical and mental injuries on at least the following eight (8) dates at Florida State Prison: August 27, 2005; July 5, 2005; April 13, 2004; October 13, 2004; January 9, 2003; August 9, 2003; July 18, 2003; and July 3, 2003.

254.    Defendants knew that the uses of force on Plaintiff Echols were not necessary to maintain or restore order.

255.    Defendant Rathmann personally authorized the use of chemical agents against Plaintiff Echols on October 13, 2004.

256.    Each of these incidents were authorized and approved by the Warden's office, under the supervision of Defendant Rathmann.

257.    After each use of force, correctional officers authored a Use of Force Report that falsely stated that Plaintiff Echols was sprayed because he was violating a rule.

258.    Defendant Rathmann never disapproved a use of force against Plaintiff Echols.

259.    Because Defendant Rathmann has created, encouraged, implemented, and enforced an atmosphere at Florida State Prison that facilitates officer abuse of inmates, on several occasions Plaintiff has refused a shower after being sprayed with chemical agents because he is afraid that correctional officers will beat him if he leaves his cell.

260.    Plaintiff Echols suffered pain and burning each time that he was abused with chemical agents at Florida State Prison with the authorization and approval of Defendant Rathmann.

40

261.    Plaintiff Echols is currently classified as a Close Management inmate and it is likely that he will continue in that classification for many years.  As a result of this classification, it is likely that Defendant Crosby will exercise his authority to retain Plaintiff Echols at Florida State Prison indefinitely.

262.    Plaintiff Echols was tortured with chemical agents on each occasion as a direct result of Defendant Crosby's policies and practices, including his policy to allow the non-spontaneous use of chemical agents against inmates diagnosed with or objectively manifesting the symptoms consistent with a mental illness and his policy not to require videotaping of the non-spontaneous use of chemical agents at Florida State Prison.

263.    Because this policy and Defendant Crosby's other policies and practices that permit and encourage officers to abuse Plaintiff Echols have not changed, Plaintiff Echols faces an unreasonable and continuing risk of again being seriously harmed with chemical agents under circumstances similar to those described in this Complaint while he is housed at Florida State Prison.

264.    Plaintiff Echols has exhausted his administrative remedies regarding the matters described herein.

### Michael McKinney

265.    Plaintiff McKinney is a 36-year-old man with a history of serious psychiatric problems including major depression.  Since his incarceration, he has attempted suicide and has been admitted for inpatient mental health treatment more than ten times.

266.    In 2004, Plaintiff McKinney was classified as an S-3, the most serious outpatient psychiatric classification, assigned to inmates with very acute mental health needs.

41

267.    Defendants knew in 2004 and currently know that Plaintiff McKinney was and is mentally ill.

268.    On June 15, 2004, correctional officers sprayed chemical agents into Plaintiff McKinney's cell.

269.    The correctional officers emptied two cans of pepper spray and one can of CS tear gas into Plaintiff McKinney's closed cell. Defendant Rathmann personally authorized the use of the CS tear gas on Plaintiff McKinney.

270.    The excessive and unauthorized use of chemical agents caused painful burning of his skin and eyes, and an abrasion on Plaintiff's right shoulder. He was referred to mental health shortly after the incident because he was experiencing psychological trauma.

271.    On June 16, 2004, Plaintiff McKinney was transferred to an Isolation Management Room (IMR) due to experiencing serious depression. Plaintiff McKinney was kept in the IMR for six days.

272.    The Warden's office, under the supervision of Defendant Rathmann, approved the unlawful use of force against Plaintiff McKinney shortly thereafter.

273.    On June 21, 2004, Plaintiff McKinney was released from the IMR and transferred back to his dorm at Florida State Prison.

274.    Later that same day, correctional officers sprayed chemical agents into Plaintiff McKinney's cell.

275.    The correctional officers emptied one can of pepper spray and one can of CS tear gas into Plaintiff McKinney's closed cell with the authorization of the Warden's office, under the supervision of Defendant Rathmann.

276.   The excessive and unauthorized use of chemical agents caused Plaintiff
McKinney to experience intense pain, and red, burning eyes and skin.

277.   On June 22, 2004, correctional officers again sprayed chemical agents into
Plaintiff McKinney's cell.

278.   The correctional officers emptied two cans of CS tear gas into Plaintiff
McKinney's closed cell with the authorization of the Warden's office, under the supervision of
Defendant Rathmann.

279.   The excessive and unauthorized use of chemical agents caused Plaintiff
McKinney to experience intense pain, and red, burning eyes and skin. He was referred to mental
health shortly after the incident because he was experiencing psychological trauma.

280.   On June 23, 2004, Plaintiff McKinney had to be transferred back to an IMR due
to experiencing serious depression. Plaintiff McKinney was kept in the IMR for 6 days.

281.   The Warden's office, under the supervision of Defendant Rathmann, approved the
unlawful uses of force against Plaintiff McKinney shortly thereafter.

282.   On May 13, 2005, correctional officers sprayed chemical agents into Plaintiff
McKinney's cell when Plaintiff McKinney was trying to get their attention because they would
not give him a food tray.

283.   The correctional officers emptied a can of pepper spray into Plaintiff McKinney's
closed cell with the authorization of the Warden's office.

284.   The excessive and unauthorized use of chemical agents caused painful burning of
his skin and eyes.

285.   Shortly after the use of force, Plaintiff McKinney declared a medical emergency

because he was having sharp chest pains. Plaintiff McKinney was also referred to mental health because he was experiencing psychological trauma.

286.    On May 16, 2005, Plaintiff McKinney tried to kill himself as a result of the use of force.

287.    On May 17, 2005, Plaintiff McKinney was placed in an IMR under suicide watch.

288.    On May 18, 2005, Plaintiff McKinney was transferred to an intensive inpatient mental health unit, for 30 days, during which he had to be treated for depression and suicidal ideations.

289.    On May 19, 2005, Defendant Rathmann approved the unlawful use of force against Plaintiff McKinney.

290.    Defendants' policy and practice of unlawfully punishing inmates with chemical agents, as well as their malicious and sadistic intent to harm Plaintiff McKinney, is demonstrated by their unrelenting and repeated use of chemical agents against him at Florida State Prison. In addition to the use of chemical agents on June 15, 2004; June 21, 2004; June 22, 2004; and May 13, 2005, Plaintiff McKinney has been sprayed with chemical agents on at least twenty-nine (28) other occasions at Florida State Prison since 2001.

291.    Defendants' use of chemical agents further evidences Defendants' malicious and sadistic intent to harm Plaintiff McKinney and contributed to and aggravated Plaintiff McKinney's physical and mental injuries on the at least the following twenty-nine (28) occasions: April 3, 2001; April 30, 2001; November 25, 2001; December 19, 2001; February 8, 2002; March 23, 2002; March 23, 2002 (later in the day); May 5, 2002; August 1, 2002; August 3, 2002; March 5, 2003; March 5, 2003 (later in the day); March 6, 2003; May 29, 2003; June

44

15, 2003; July 15, 2003; September 6, 2003; October 5, 2003; October 7, 2003; October 7, 2003

(later in the day); October 11, 2003; February 8, 2004; February 9, 2004; February 24, 2004;

March 9, 2004; January 5, 2005; February 3, 2005; and February 28, 2005.

292.   Defendants knew that the uses of force on Plaintiff McKinney were not necessary

to maintain or restore order.

293.   Each of the incidents since June 2004 was authorized and approved by the

Warden's office under the supervision of Defendant Rathmann.

294.   Defendant Rathmann never disapproved a use of force against Plaintiff

McKinney.

295.   Because Defendant Rathmann has created, encouraged, implemented, and

enforced an atmosphere at Florida State Prison that facilitates officer abuse of inmates, on

several occasions, Plaintiff McKinney has refused a shower after being sprayed with chemical

agents because he is afraid that correctional officers will beat him or spray him again if he leaves

his cell.

296.   Plaintiff McKinney suffered pain and burning each time that he was abused with

chemical agents at Florida State Prison with the authorization and approval of Defendant

Rathmann.

297.   Plaintiff McKinney is currently classified as a Close Management inmate and it is

likely that he will continue in that classification for many years. As a result of this classification,

it is likely that Defendant Crosby will exercise his authority to retain Plaintiff McKinney at

Florida State Prison indefinitely.

298.   Plaintiff McKinney was tortured with chemical agents on each occasion as a

direct result of Defendant Crosby's policies and practices, including his policy to allow the non-spontaneous use of chemical agents against inmates diagnosed with or objectively manifesting the symptoms consistent with a mental illness and his policy not to require videotaping of the non-spontaneous use of chemical agents at Florida State Prison.

299.     Because this policy and Defendant Crosby's other policies and practices permit and encourage the officers to abuse Plaintiff McKinney have not changed, Plaintiff McKinney faces an unreasonable and continuing risk of again being seriously harmed with chemical agents under circumstances similar to those described in this Complaint while he is housed at Florida State Prison.

300.     Plaintiff McKinney has exhausted his administrative remedies regarding the matters described herein.

## Charles Morgan

301.     Plaintiff Morgan is a 39-year-old man with a history of serious psychiatric problems including Bipolar Disorder and Depression. Since his incarceration, he has attempted suicide on multiple occasions and has been admitted for inpatient mental health care numerous times.

302.     Plaintiff Morgan has been classified as an S-3 for the duration of his time at Florida State Prison. S-3 is the most serious outpatient psychiatric classification, assigned to inmates with very acute mental health needs.

303.     Plaintiff Morgan has been classified as an asthmatic since an initial health screening in November 2003. Plaintiff Morgan requires the use of an inhaler and the Department has prescribed inhalers to Plaintiff Morgan since his initial screening.

46

304.    Defendants knew in 2004 and currently know that Plaintiff Morgan is mentally ill and an asthmatic.

305.    In late June 2004, Plaintiff Morgan was experiencing immense grief and depression because of the recent death of his mother. He was hearing voices, feeling suicidal, and he sought help by declaring multiple psychological emergencies.

306.    From June 28, 2004 until June 30, 2004 and from July 1, 2004 until July 2, 2004, Plaintiff Morgan was kept in inpatient status in an Isolation Management Room (IMR) because he was depressed and suicidal.

307.    On July 2, 2004, upon return to his cell at Florida State Prison, Plaintiff Morgan declared a psychological emergency. Plaintiff Morgan felt like he was "going out of his mind." He was agitated, shaking, and clearly depressed.

308.    On July 3, 2004, correctional officers sprayed chemical agents into Plaintiff Morgan's cell.

309.    Defendant Green emptied two cans of pepper spray into Plaintiff Morgan's closed cell under the direct supervision of Defendant Ellis. The use of force was authorized by the Warden's office, under the supervision of Defendant Rathmann.

310.    The excessive and unauthorized use of chemical agents caused Plaintiff Morgan to experience shortness of breath, and painful burning of his skin and eyes.

311.    After Plaintiff Morgan was abused with chemical agents, the Warden's office, under the supervision of Defendant Rathmann, approved the unlawful use of force against him.

312.    During July and August 2004, Plaintiff Morgan was seen by mental health staff on a weekly basis.

47

313. On August 25, 2004, Plaintiff Morgan cut his wrist in an attempted suicide. Plaintiff Morgan was placed in a shower on the wing for a few hours for observation and then returned to his cell.

314. Later that same evening, correctional officers sprayed chemical agents into Plaintiff Morgan's cell while he was sleeping.

315. The correctional officers emptied two cans of pepper spray and one can of CS tear gas into Plaintiff Morgan's closed cell with the authorization of the Warden's office under the supervision of Defendant Rathmann.

316. The excessive and unauthorized use of force caused Plaintiff Morgan to experience shortness of breath, and painful burning of his skin and eyes.

317. Correctional officers who sprayed Plaintiff Morgan wrote a report, which falsely stated they gassed him because he was kicking his door and yelling, to cover up the unlawfulness of their actions.

318. The Warden's office, under the supervision of Defendant Rathmann, approved the unlawful use of force against Plaintiff Morgan.

319. On August 26, 2004, Plaintiff Morgan was transferred to inpatient status because of the severity of his mental health needs. He remained in inpatient status until late September 2005.

320. Plaintiff Morgan was recently released back to Florida State Prison after requiring 13 consecutive months of intensive inpatient mental health care following the August 25, 2004, use of chemical agents against him.

321. Defendants' policy and practice of unlawfully punishing inmates with chemical

48

agents, as well as their malicious and sadistic intent to harm Plaintiff Morgan, is further demonstrated by their unrelenting and repeated use of chemical agents against him at Florida State Prison. In addition to the use of chemical agents on July 3, 2004 and August 25, 2004, Defendants used chemical agents against Plaintiff Morgan an additional four times at Florida State Prison.

322.   Defendants' use of chemical agents further evidences Defendants' malicious and sadistic intent to harm Plaintiff Morgan and contributed to and aggravated Plaintiff Morgan's physical and mental injuries on at least the following four occasions since 2001:  December 7, 2001; February 16, 2002; March 27, 2002; April 18, 2002; and April 22, 2002.

323.   Defendant Crosby's policy and practice of using chemical agents to punish inmates throughout Florida prisons resulted in two further uses of chemical agents against Plaintiff Morgan at institutions other than Florida State Prison on the following dates, which further evidences Defendants' malicious intent to harm Plaintiff Morgan: November 14, 2002; and December 3, 2002.

324.   Defendants knew that the uses of force on Plaintiff Morgan were not necessary to maintain or restore order.

325.   Defendant Rathmann never disapproved a use of force against Plaintiff Morgan.

326.   Because Defendant Rathmann has created, encouraged, implemented, and enforced an atmosphere at Florida State Prison that facilitates officer abuse of inmates, Plaintiff refused a shower after being sprayed with chemical agents because he is afraid that correctional officers will beat him or spray him again if he leaves his cell.

327.   Plaintiff Morgan suffered pain, burning, and shortness of breath each time that he

49

was abused with chemical agents at Florida State Prison with the authorization and approval of Defendant Rathmann.

328.    Plaintiff Morgan is currently classified as a Close Management inmate and it is likely that he will continue in that classification for many years.  As a result of this classification, it is likely that Defendant Crosby will exercise his authority to retain Plaintiff Morgan at Florida State Prison indefinitely.

329.    Plaintiff Morgan was tortured with chemical agents on each occasion as a direct result of Defendant Crosby's policies and practices, including his policy to allow the non-spontaneous use of chemical agents against inmates diagnosed with or objectively manifesting the symptoms consistent with a mental illness and against inmates with asthma, and to not videotape the non-spontaneous use of chemical agents at Florida State Prison.

330.    Because this policy and Defendant Crosby's other policies and practices that permit and encourage officers to abuse Plaintiff Morgan have not changed, Plaintiff Morgan faces an unreasonable and continuing risk of again being seriously harmed with chemical agents under circumstances similar to those described in this Complaint while he is housed at Florida State Prison.

331.    Plaintiff Morgan has exhausted his administrative remedies regarding the matters described herein.

### Antonio Ward

332.    Plaintiff Ward is a 32-year-old man with psychiatric problems, including depression and delusions.  Plaintiff Ward has required psychiatric inpatient care on a number of occasions.  He currently has a psychological grade of S-3, which is the most serious outpatient

50

psychiatric classification, assigned to inmates with very acute mental health needs.

333.   Defendants knew in 2004 and currently know that Plaintiff Ward is mentally ill.

334.   On April 5, 2005, while Plaintiff Ward was locked in his cell at Florida State Prison, correctional officers sprayed chemical agents into his cell. This unlawful use of force was supervised and directed by Defendant Muse and authorized by Defendant Rathmann.

335.   As a result of this malicious use of force, Plaintiff Ward suffered a psychiatric breakdown. The next day, on April 6, 2005, Plaintiff Ward was transferred to the inpatient psychiatric unit at Union Correctional Institution in Union County, Florida, for intensive mental health treatment.

336.   On April 14, 2005, Plaintiff Ward was again sprayed with chemical agents at Florida State Prison under the supervision of Defendant Muse.

337.   A few weeks later, Plaintiff Ward began waking up at night with chest pains, gasping for air. At that time the medical staff at Florida State Prison noted that Plaintiff Ward may have asthma.

338.   On July 14, 2005, Plaintiff Ward was again sprayed with chemical agents at Florida State Prison while he was complaint in his cell. The correctional officers sprayed him in retaliation for speaking to Plaintiffs' attorneys and expert witness the previous day during a tour of Florida State Prison pursuant to a lawsuit filed in the Middle District of Florida, Osterback v. Crosby.

339.   This retaliatory use of force was supervised by Defendant Muse and authorized by Defendant Rathmann.

340.   After he was sprayed Plaintiff Ward suffered respiratory distress, blurry vision,

painful burning of his skin and eyes, and an aggravation of his psychiatric symptoms, including depression.

341.    As a result of the use of chemical agents against him, Plaintiff Ward has developed serious chronic respiratory problems. In October 2005 he was diagnosed with a respiratory disorder called dyspnea, which causes shortness of breath and difficulty breathing.

342.    Defendants' policy and practice of unlawfully punishing inmates with chemical agents, as well as their malicious and sadistic intent to harm Plaintiff Ward, is demonstrated by their unrelenting and repeated use of chemical agents against him at Florida State Prison.

343.    Prior to the incidents of April 5, 2005; April 14, 2005; and July 14, 2005, Defendant Green maliciously used chemical agents against Plaintiff Ward on May 26, 2004.

344.    Defendant Crosby's policy and practice of using chemical agents to punish inmates throughout Florida prisons resulted in six further uses of chemical agents against Plaintiff Ward at institutions other than Florida State Prison on the following dates, which further evidences Defendants' malicious intent to harm Plaintiff Ward: September 18, 2001; June 21, 2002; July 26, 2002; October 14, 2003; December 2, 2003; December 2, 2003 (later in the day); and January 8, 2004.

345.    Defendants knew that the uses of force on Plaintiff Ward were not necessary to maintain or restore order.

346.    Defendant Rathmann never disapproved a use of chemical agents against Plaintiff Ward.

347.    Plaintiff Ward is currently classified as a Close Management inmate and it is likely that he will continue in that classification for many years. As a result of this classification,

it is likely that Defendant Crosby will exercise his authority to retain Plaintiff Ward at Florida State Prison indefinitely.

348.    Plaintiff Ward was tortured with chemical agents as a direct result of Defendant Crosby's policies and practices, including his policy to allow the non-spontaneous use of chemical agents against inmates diagnosed with or objectively manifesting the symptoms consistent with a mental illness and against inmates with asthma, and to not videotape the non-spontaneous use of chemical agents at Florida State Prison.

349.    Because this policy and Defendant Crosby's other policies and practices that permit and encourage officers to abuse Plaintiff Ward have not changed, Plaintiff Ward faces an unreasonable and continuing risk of again being seriously harmed with chemical agents under circumstances similar to those described in this Complaint at Florida State Prison.

350.    Plaintiff Ward has exhausted all available administrative remedies regarding the matters described herein.  His requests for relief were denied by Defendant Crosby.

## CAUSES OF ACTION: EIGHTH AMENDMENT VIOLATIONS

351.    Based on the foregoing allegations, Defendants have violated Plaintiffs' right to be free from cruel and unusual punishment by using chemical agents maliciously and sadistically.

352.    Defendants Crosby, Carter, Sapp, Sirmones and Lazenby, Redd, Clark, Jarvis and Rathmann have actively implemented an unwritten policy that correctional officers are to use chemical agents to inflict corporal punishment on Florida State Prison inmates.

353.    Defendants Crosby, Carter, Sapp, Sirmones and Lazenby, Redd, Clark, Jarvis and Rathmann have knowingly permitted their subordinates to repeatedly use chemical agents in

53

violation of written policy and maliciously and sadistically for the very purpose of causing harm and not in a good-faith effort to maintain or restore discipline. Their failure to act resulted in the use of unjustified and excessive force against Plaintiffs.

354. Defendants Crosby and Rathmann continue to act with deliberate indifference to the substantial likelihood that Plaintiffs will again be subjected to chemical agents maliciously and sadistically to cause harm and not for any legitimate penological reason.

355. Because of Defendants Crosby and Rathmann's actions, the unjustified or excessive use of chemical agents is so pervasive that there is an extremely high likelihood that the Plaintiffs will be subject to this unconstitutional practice in the future.

## COUNT I
### Plaintiff Thomas Claim for Damages

356. Plaintiff Thomas repeats and realleges paragraphs 1 through 11, and 21 through 125.

357. Defendants Musselman, Anderson, Clark, Wilson, Muse, Halle, Tricocci, Chastain, Barnett, Barton, Lampp, Whitehurst, Crosby, Redd, and Sapp's actions violated Plaintiff Thomas's right to be free from cruel and unusual punishment, which is guaranteed by the Eighth Amendment.

358. As a result of Defendants' unconstitutional actions, Plaintiff Thomas suffered second-degree chemical burns over a large portion of his body, respiratory distress, increased anxiety related to his mental illness, pain and suffering, mental and emotional distress, humiliation and degradation, and aggravation of previous injuries. Plaintiff Thomas' injuries are permanent or continue and Plaintiff will suffer further losses in the future.

54

359.    As a further result of Defendants' acts, which were done with malice or reckless indifference to Plaintiff Thomas' federally protected rights, Plaintiff Thomas is entitled to punitive damages.

### COUNT II
### Plaintiff Ulrath Claim for Damages

360.    Plaintiff Ulrath repeats and realleges paragraphs 1 through 10, 12, 21 through 82 and 126 through 148.

361.    Defendants Lindsey, Shipley, Ellis, Jarvis, Crosby, Carter, Sapp, Sirmones, Lampp, and Lazenby violated Plaintiff Ulrath's right to be free from cruel and unusual punishment, which is guaranteed by the Eighth Amendment.

362.    As a result of Defendants' unconstitutional actions, Plaintiff Ulrath suffered chemical burns over a large portion of his body, increased anxiety related to his mental illness, pain and suffering, mental and emotional distress, humiliation and degradation, and aggravation of previous injuries. Plaintiff Ulrath's injuries are permanent or continue and Plaintiff will suffer further losses in the future.

363.    As a further result of Defendants' acts, which were done with malice or reckless indifference to Plaintiff Ulrath's federally protected rights, Plaintiff Ulrath is entitled to punitive damages.

### COUNT III
### Plaintiff Butler Claim for Damages

364.    Plaintiff Butler repeats and realleges paragraphs 1 through 10, 13, 21 through 82 and 149 through 171.

365.    Defendants Reeder, Chastain, Clark, Crosby, Redd, and Sapp violated Plaintiff

55

Butler's right to be free from cruel and unusual punishment, which is guaranteed by the Eighth Amendment.

366.    As a result of Defendants' unconstitutional actions, Plaintiff Butler suffered second-degree chemical burns, pain and suffering, respiratory distress, mental and emotional distress, humiliation and degradation, and aggravation of previous injuries. Plaintiff Butler's injuries are permanent or continue and Plaintiff will suffer further losses in the future.

367.    As a further result of Defendants' acts, which were done with malice or reckless indifference to Plaintiff Butler's federally protected rights, Plaintiff Butler is entitled to punitive damages.

## COUNT IV
### Plaintiff Massie Claim for Damages

368.    Plaintiff Massie repeats and realleges paragraphs 1 through 10, 14, 21 through **82** and 172 through 193.

369.    Defendants Green, Halle, Clark, Crosby, Redd, and Sapp violated Plaintiff Massie's right to be free from cruel and unusual punishment, which is guaranteed by the Eighth Amendment.

370.    As a result of Defendants' unconstitutional actions, Plaintiff Massie suffered second-degree chemical burns over a large portion of his body, increased anxiety related to his mental illness, pain and suffering, mental and emotional distress, humiliation and degradation, and aggravation of previous injuries. Plaintiff Massie's injuries are permanent or continue and Plaintiff will suffer further losses in the future.

371.    As a further result of Defendants' acts, which were done with malice or reckless

56

indifference to Plaintiff Massie's federally protected rights, Plaintiff Massie is entitled to punitive damages.

## COUNT V
### Plaintiff Frazier Claim for Damages

372.    Plaintiff Frazier repeats and realleges paragraphs 1 through 10, 15, 21 through 82 and 194 through 216.

373.    Defendants Reynolds, Reeder, Lampp, Riggs, Crosby, Redd, and Sapp violated Plaintiff Frazier's right to be free from cruel and unusual punishment, which is guaranteed by the Eighth Amendment.

374.    As a result of Defendants' unconstitutional actions, Plaintiff Frazier suffered second-degree chemical burns, inflammation of the skin on his arms, pain and suffering, mental and emotional distress, humiliation and degradation.        Plaintiff Frazier's injuries are permanent or continue and Plaintiff will suffer further losses in the future.

375.    As a further result of Defendants' acts, which were done with malice or reckless indifference to Plaintiff Frazier's federally protected rights, Plaintiff Frazier is entitled to punitive damages.

## COUNT VI
### Plaintiff Williams Claim for Damages

376.    Plaintiff Williams repeats and realleges paragraphs 1 through 10, 16, 21 through 82 and 217 through 234.

377.    Defendants Rizer, Reynolds, Riggs, Lazenby, Crosby, Carter, Sapp, and Sirmones violated Plaintiff Williams' right to be free from cruel and unusual punishment, which is guaranteed by the Eighth Amendment.

378.    As a result of Defendants' unconstitutional actions, Plaintiff Williams suffered permanent damage to his right eye, pain and suffering, mental and emotional distress, humiliation and degradation, and aggravation of previous injuries.  Plaintiff Williams' injuries are permanent or continue and Plaintiff will suffer further losses in the future.

379.    As a further result of Defendants' acts, which were done with malice or reckless indifference to Plaintiff Williams' federally protected rights, Plaintiff Williams is entitled to punitive damages.

## COUNT VII
## Plaintiff Echols Claim for Damages

380.    Plaintiff Echols repeats and realleges paragraphs 1 through 10, 17, 21 through 82 and 235 through 264.

381.    Defendants Rathmann and Crosby violated Plaintiff Echols's right to be free from cruel and unusual punishment, which is guaranteed by the Eighth Amendment.

382.    As a result of Defendants' unconstitutional actions, Plaintiff Echols has suffered chemical burns, a deterioration of his mental health, pain and suffering, mental and emotional distress, humiliation and degradation, and aggravation of previous injuries.  Plaintiff Echols' injuries are permanent or continue and Plaintiff will suffer further losses in the future.

383.    As a further result of Defendants' acts, which were done with malice or reckless indifference to Plaintiff Echols' federally protected rights, Plaintiff Echols is entitled to punitive damages.

## COUNT VIII
## Plaintiff McKinney Claim for Damages

384.    Plaintiff McKinney repeats and realleges paragraphs 1 through 10, 18, 21 through

58

82 and 265 through 300.

385.    Defendants Rathmann and Crosby violated Plaintiff McKinney's right to be free from cruel and unusual punishment, which is guaranteed by the Eighth Amendment.

386.    As a result of Defendants' unconstitutional actions, Plaintiff McKinney has suffered intense physical pain, redness of the skin and eyes, respiratory distress, a deterioration of his mental health, pain and suffering, mental and emotional distress, humiliation and degradation, and aggravation of previous injuries. Plaintiff McKinney's injuries are permanent or continue and Plaintiff will suffer further losses in the future.

387.    As a further result of Defendants' acts, which were done with malice or reckless indifference to Plaintiff McKinney's federally protected rights, Plaintiff McKinney is entitled to punitive damages.

### COUNT IX
### Plaintiff Morgan Claim for Damages

388.    Plaintiff Morgan repeats and realleges paragraphs 1 through 10, 19, 21 through 82 and 301 through 331.

389.    Defendants Ellis, Green, Rathmann, and Crosby violated Plaintiff Morgan's right to be free from cruel and unusual punishment, which is guaranteed by the Eighth Amendment.

390.    As a result of Defendants' unconstitutional actions, Plaintiff Morgan has suffered intense physical pain, redness of the skin and eyes, respiratory distress, a deterioration of his mental health, pain and suffering, mental and emotional distress, humiliation and degradation, and aggravation of previous injuries. Plaintiff Morgan's injuries are permanent or continue and Plaintiff will suffer further losses in the future.

391.    As a further result of Defendants' acts, which were done with malice or reckless indifference to Plaintiff Morgan's federally protected rights, Plaintiff Morgan is entitled to punitive damages.

## COUNT X
### Plaintiff Ward Claim for Damages

392.    Plaintiff Ward repeats and realleges paragraphs 1 through 10, 20 through 82 and 332 through 350.

393.    Defendants Muse, Rathmann and Crosby violated Plaintiff Ward's right to be free from cruel and unusual punishment, which is guaranteed by the Eighth Amendment.

394.    As a result of Defendants' unconstitutional actions, Plaintiff Ward is suffering from a chronic respiratory disorder, increased depression related to his mental illness, pain and suffering, mental and emotional distress, humiliation and degradation.

395.    Plaintiff Ward's injuries are permanent or continue and Plaintiff will suffer further losses in the future.

396.    As a further result of Defendants' acts, which were done with malice or reckless indifference to Plaintiff Ward's federally protected rights, Plaintiff Ward is entitled to punitive damages.

## COUNT XI
### All Plaintiffs Claim for Declaratory and Injunctive Relief

397.    Plaintiffs repeat and reallege paragraphs 1-351.

398.    Because of Defendant Crosby and other Defendants' policies and practices, each Plaintiff faces an unconstitutional risk of again being seriously harmed with chemical agents under circumstances similar to those described in this Complaint if he remains at or is returned to

Florida State Prison.

399.    Unless a declaratory judgment issues stating that these policies, practices and customs are unlawful and Defendants are enjoined, Defendants Crosby and Rathmann will continue to violate the Eighth Amendment rights of each of the Plaintiffs.  These continuing violations constitute an irreparable injury for which each Plaintiff has no adequate remedy at law.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request this Court grant the following relief:

A.  Plaintiff Thomas, pursuant to Count I, seeks compensatory and punitive damages from Defendants Musselman, Anderson, Clark, Wilson, Muse, Halle, Tricocci, Chastain, Barnett, Barton, Lampp, Whitehurst, Crosby, Redd, and Sapp.

B.  Plaintiff Ulrath, pursuant to Count II, seeks compensatory and punitive damages from Defendants Lindsey, Shipley, Ellis, Jarvis, Crosby, Carter, Sapp, Sirmones, Lampp, and Lazenby.

C.  Plaintiff Butler, pursuant to Count III, seeks compensatory and punitive damages from Defendants Reeder, Chastain, Clark, Crosby, Redd, and Sapp.

D.  Plaintiff Massie, pursuant to Count IV, seeks compensatory and punitive damages from Defendants Green, Clark, Crosby, Redd, Halle, and Sapp.

E.  Plaintiff Frazier, pursuant to Count V, seeks compensatory and punitive damages from Defendants Reynolds, Reeder, Lampp, Riggs, Crosby, Redd, and Sapp.

F.  Plaintiff Williams, pursuant to Count VI, seeks compensatory and punitive damages from Defendants Reynolds, Crosby, Carter, Sapp, Sirmones, Rizer, Riggs, and

Lazenby.

G. Plaintiff Echols, pursuant to Count VII, seeks compensatory and punitive damages from Defendants Rathmann, and Crosby.

H. Plaintiff McKinney, pursuant to Count VIII, seeks compensatory and punitive damages from Defendants Rathmann, and Crosby.

I. Plaintiff Morgan, pursuant to Count IX, seeks compensatory and punitive damages from Defendants Ellis, Green, Rathmann, and Crosby.

J. Plaintiff Ward, pursuant to Count X, seeks compensatory and punitive damages from Defendants Muse, Rathmann, and Crosby.

K. Plaintiffs Thomas and Ulrath, pursuant to Counts I and II, seek an injunction that will prohibit Defendant Crosby as Secretary from transferring them to Florida State Prison.

L. All Plaintiffs, pursuant to Counts I-X request that the Court declare that the unjustified and excessive use of chemical agents at Florida State Prison under the circumstances described in this Complaint violates the Eighth and Fourteenth Amendments to the Constitution of the United States.

M. All Plaintiffs, pursuant to Counts I-X, request that the Court require Defendant Crosby to submit a plan to this Court for approval which will, to the extent possible, prevent chemical agents from being used at Florida State Prison against Plaintiffs maliciously and sadistically for the very purpose of causing harm and not in a good-faith effort to restore order or maintain discipline or for any other legitimate penological reason.

N. Require that the plan submitted to the Court for approval make proper provision to prevent chemical agents being used at Florida State Prison in controlled situations

where their use would pose a risk to the mental or physical health of the prisoner.

O. Require that the plan submitted to the Court for approval require that all non-spontaneous uses of chemical agents at Florida State Prison to be videotaped with a hand-held camera with audio.

P. Require that the plan submitted to the Court for approval abolishing all non-spontaneous uses of chemical agents at Florida State Prison on inmates diagnosed with or objectively manifesting the symptoms consistent with a mental illness.

Q. Require that the plan submitted to the Court for approval abolish all non-spontaneous uses of chemical agents at Florida State Prison on inmates with medical conditions, such as asthma, which increase the risk of harm if chemical agents are used.

R. Require that the plan submitted to the Court for approval include provision for the comprehensive training of staff at Florida State Prison in the use of techniques to calm inmates who are upset without the need for any kind of force.

S. Require that the plan submitted to the Court for approval require the use of staff specially trained to defuse confrontations at Florida State Prison prior to the non-spontaneous use of chemical agents.

T. Require that the plan submitted to the Court for approval include provision for adequate and meaningful review and monitoring of all uses of chemical agents at Florida State Prison.

U. Require that the plan submitted to the Court for approval bar the use of CS tear gas and CN tear gas in enclosed spaces such as the segregated housing units at Florida State Prison.

V.  Require that the plan submitted to the Court require the implementation of proper decontamination procedures at Florida State Prison to reduce the pain and chance of injury after exposure to chemical agents, including but not limited to, access to fresh outside air, cold showers lasting at least 15 minutes, the use of specialized skin products designed for chemical decontamination, and ventilation of the building with fresh air.

W.  Require that the plan submitted to the Court require the use of meaningful de-escalation techniques at Florida State Prison to insure that chemical agents are truly a last resort, including but not limited to, counseling by mental health staff and high-level supervisors.

X.  Enter permanent injunctive relief enjoining Defendant Crosby in his official capacity, his successor in office, and his servants, agents and employees from failing to properly supervise, review and investigate the actions of their subordinates when their subordinates use chemical agents at Florida State Prison.

Y.  All Plaintiffs seek attorneys' fees and costs, pursuant to 42 U.S.C. § 1988.

Z.  All Plaintiffs seek any other relief as the Court may deem just and proper.

Respectfully submitted,

George E. Schulz, Jr., Esq.
Fla. Bar No. 169507
Michael Agliata, Esq.
Holland & Knight LLP
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
(904) 353-2000
(904) 358-1872 (facsimile)

and

Cassandra Capobianco, Esq.
Lisa White Shirley, Esq.
Christopher M. Jones, Esq.
Kristen Cooley Lentz, Esq.
Florida Institutional Legal Services
1010-B NW 8th Avenue
Gainesville, Florida 32601
352-375-2494
352-271-4366 (Fax)

and

Peter M. Siegel, Esq.
Randall C. Berg, Esq.
Florida Justice Institute, Inc.
100 SE 2nd Street
4320 Bank of America Tower
Miami, Florida 33131
305-358-2081
305-358-0910 (Fax)

*Attorneys for Plaintiffs*

s/ Cassandra Capobianco
Attorney for Plaintiff
Fla. Bar. No. 614734

65