**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JEREMIAH THOMAS, et al.

    Plaintiffs,

vs.                                                       Case No. 3:04-cv-917-J-32JRK

WALTER A. McNEIL, et al.,

    Defendants.

_____

**FINAL JUDGMENT AND FINAL INJUNCTION
IN FAVOR OF PLAINTIFFS JEREMIAH THOMAS AND MICHAEL MCKINNEY
AND AGAINST DEFENDANTS WALTER MCNEIL AND RANDALL BRYANT**

On January 9, 2009, following a five day jury trial, the Court entered extensive Findings of Fact and Conclusions of Law (Doc. 434) which concluded that "the [Florida] DOC's [Department of Corrections] policies [on chemical sprayings] as applied to [plaintiffs] Jeremiah Thomas and Michael McKinney resulted in violations of their Eighth Amendment rights." Doc. 434 at 74.[1] The Court found that the defendant DOC officials acted with deliberate indifference to the severe risk of harm to plaintiffs Thomas and McKinney when DOC officers repeatedly sprayed plaintiffs with chemical agents for behaviors which were caused by their mental illnesses and over which they had no control. The Court held that injunctive relief was required to redress these Eighth Amendment violations.

       The Court directed the parties to confer in an attempt to reach an agreement on the proposed terms of an injunction and also asked the defendant DOC officials to submit their

---

[1] The Court found insufficient evidence that the four other named plaintiffs suffered Eighth Amendment violations.

proposal for injunctive relief. However, instead of submitting a proposal, defendants stated that they were unable to do so because they oppose the entry of any injunctive order (Doc. 439 at 2). Defendants' refusal to submit a proposal for injunctive relief is puzzling. First, 18 U.S.C. § 3626 (a)(1), counsels the Court to fashion prospective relief which is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." The Court presumed that it was defendants, as the officials charged with running the DOC, who would be in the best position to suggest the least intrusive injunctive relief consistent with redressing the constitutional violation. Second, the Court's solicitation of defendants' views on the proper scope of injunctive relief in this type of a situation is strongly encouraged by the Supreme Court. Lewis v. Casey, 518 U.S. 341, 361-62 (1996).[2] Nevertheless, notwithstanding defendants' refusal to assist, the Court must still fashion injunctive relief which finds the balance between redressing the constitutional violation and recognizing that it is primarily defendants' job, and not the Court's, to run the prison system.

As requested, plaintiffs have provided some suggestions to the Court, which the Court has taken into consideration. However, the Court must independently arrive at its decision concerning the terms of injunctive relief. In so doing, the Court calls upon several sources. By borrowing terms, procedures and DOC regulations already in place in related

---

[2]It may be that defendants desire to appeal this Court's finding of a constitutional violation. However, this does not explain defendants' refusal because defendants could suggest terms of an injunction without relinquishing their right to appeal the Court's final judgment.

2

circumstances, the Court has endeavored to redress the found constitutional violation, while at the same time following the mandate of 18 U.S.C. § 3626 (a)(1).

The evidence established that a "spontaneous" (or immediate) application of chemical agents by correctional officers is permitted in emergent situations where an inmate's conduct presents immediate danger to the inmate or another person (see Findings of Facts and Conclusions of Law, Doc. 434 at 7 and n.10). In contrast, the "non-spontaneous" use of chemical agents involves "instances where an inmate is engaging in certain prohibited behavior that does not involve harm or the immediate threat of harm to a staff person or another inmate" and requires prior consultation with and approval from supervisors. Id. This case, as alleged and proven, involves only the "non-spontaneous" application of chemical agents.

Second, plaintiffs cite Florida Administrative Code Ann. R. 33-404.107(1)(a), an already existing DOC regulation entitled "Use of Force with Mentally Disordered Inmates," as providing some guidance to the Court in fashioning injunctive relief. This regulation provides in part that, in non-emergency (that is, "non-spontaneous") situations, "medical and mental health care staff shall be consulted to assess if the force to be used is dangerous to that inmate's well-being, or likely to exacerbate the current crisis." Third, as a matter of established DOC policy, in every occasion where DOC security officers are considering the non-spontaneous spraying of an inmate, medical staff is consulted beforehand to determine whether there are any medical contraindications to the application of the chemical agents. Moreover, DOC employs a relatively large staff of mental health professionals on the CM wings at FSP who would also be available to consult about the mental health implications

3

of a proposed non-spontaneous spraying.

Fourth, as pleaded and proven, this case involves only the use of chemical agents on mentally ill inmates who are housed in close management ("CM") status at Florida State Prison ("FSP"). Thus, the scope of injunctive relief must also be so demarked. Finally, the testimony was uncontradicted that, so long as Thomas and McKinney are housed at Union Correctional Institution (where they currently are), they are not subject to the non-spontaneous use of chemical agents without prior mental health intervention. Thus, it is only if McKinney and Thomas are returned to CM status at FSP that an injunction is required to protect their Eighth Amendment rights[3].

Finally, the injunctive relief ordered below only applies to two inmates and should require little or no expenditure of additional resources or disruption of prison operations.

Therefore, upon due consideration and upon finding that the following relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right, it is hereby

**ORDERED AND ADJUDGED**:

1. The findings made in this Order as well as those made in the Findings of Fact and Conclusions of Law (Doc. 434) and the February 11, 2009 Order (Doc. 440) are

---

[3]In their submission, plaintiffs asked the Court to expand the scope of injunctive relief to cover other DOC institutions where McKinney and Thomas might be sent. However, this case was pleaded and proven only as it relates to the CM facilities at FSP. Indeed, other than the Secretary of DOC, the only remaining defendant is the Warden of FSP. Thus, the Court cannot go beyond the pleadings and proof in fashioning injunctive relief.

incorporated by reference.

    2.    In the event that plaintiffs Jeremiah Thomas or Michael McKinney are placed in the Florida State Prison (FSP) Close Management (CM) wing, defendants Walter McNeil, as Secretary of the Florida Department of Corrections, and Randall Bryant, as Warden of the Florida State Prison, in their official capacities, are enjoined from allowing the non-spontaneous application of chemical agents to plaintiffs Thomas or McKinney without first consulting with DOC's trained mental health staff so that a mental health professional can determine whether the application of the chemical agents is dangerous to the inmate's well-being, likely to exacerbate the current crisis or whether, on account of mental illness, the inmate is currently unable to conform his conduct to comply with the directives being given to him by correctional staff.[4] Once contacted, the mental health professional will use his or her professional judgment to determine whether the non-spontaneous use of chemical agents is contraindicated for that inmate at that time (similar to the prior consultations which now occur with medical staff before non-spontaneous application of chemical agents is permitted). If, after consultation, the mental health professional deems the use of chemical agents to be contraindicated, chemical agents may not be employed at that time.

    3.    A copy of a Notice reading as follows will be placed in the respective inmate's security, medical and mental health files and will be otherwise posted or disseminated to ensure that all affected DOC personnel are apprised of the injunction:

---

[4]This required prior consultation with mental health staff may or may not lead to the mental health professional going cell front to speak to the inmate. This is left to the judgment of the mental health professional and security staff in the given situation.

> **BY ORDER OF THE FEDERAL COURT, NO NON-SPONTANEOUS SPRAYING OF INMATE [JEREMIAH THOMAS] [MICHAEL McKINNEY] MAY TAKE PLACE AT FSP ON CM WING WITHOUT PRIOR CONSULTATION WITH A DOC MENTAL HEALTH PROFESSIONAL TO DETERMINE WHETHER THE USE OF CHEMICAL AGENTS IS CONTRAINDICATED. A COMPLETE COPY OF THE COURT'S ORDER IS ON FILE IN THE WARDEN'S OFFICE.**

4. Any non-spontaneous application of chemical agents to Thomas or McKinney at the CM wing of FSP will be videotaped and preserved until further order of the Court.

5. In the event that either Thomas or McKinney are transferred back to FSP CM status, a notice of that transfer will be filed with the Court within fifteen (15) days of the transfer, with a copy to counsel for the plaintiffs. Thereafter, for a period of one (1) year after the transfer, defendants will file a notice with the Court within fifteen (15) days of any non-spontaneous use of chemical agents on either Thomas or McKinney, with a copy to plaintiffs' counsel. The notice will contain proof of compliance with the terms of this injunction.

6. Other than as stated in paragraph five (5), the terms of this injunction will remain applicable until the Court, upon motion by any interested party, dissolves the injunction.[5]

7. This Final Judgment and Final Injunction is hereby entered in favor of plaintiffs

---

[5] See 18 U.S.C. § 3626(b)(1).

Jeremiah Thomas and Michael McKinney and against defendants Walter McNeil and Randall Bryant, in their official capacities; this document is intended to meet the requirements of Rules 54 and 58(a), Federal Rules of Civil Procedure.

**DONE AND ORDERED** at Jacksonville, Florida this 9th day of March, 2009.

TIMOTHY J. CORRIGAN
United States District Judge

md/s.
Copies to:
Counsel of Record